**UNITED STATES, Appellee,**

v.

**Sergeant Thomas D. EMBRY III, United States Army, Appellant.**

**ARMY 20011179.**

U.S. Army Court of Criminal Appeals.

31 March 2005.

---

For Appellant: Colonel Robert D. Teetsel, JA; Captain Gregory M. Kelch, JA (on brief); Major Allyson G. Lambert, JA.

For Appellee: Lieutenant Colonel Margaret B. Baines, JA; Major Natalie A. Kolb, JA; Captain Edward E. Wiggers, JA (on brief).

Before MERCK, JOHNSON, and MOORE, Appellate Military Judges.

## OPINION OF THE COURT

MERCK, Senior Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted robbery, rape, larceny, wrongful appropriation, assault with a dangerous weapon,[1] housebreaking, kidnapping, and communicating a threat, in violation of Articles 80, 120, 121, 128, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, 921, 928, 930, and 934 [hereinafter UCMJ]. The members sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged and credited appellant with 261 days of confinement credit against the approved sentence to confinement.

The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant's assignments of error, the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's reply thereto. Appellant asserts, *inter alia*, that he is entitled to relief because the record contains a substantial omission and is, therefore, incomplete. We agree and will grant appropriate relief in our decretal paragraph.

### BACKGROUND

On 29 March 2001, after the alleged offenses, appellant spoke to Ms. Shirley Coleman, a social work assistant.[2] During this conversation, he admitted that he took a handgun from his wife's apartment. He also admitted to holding his wife hostage at gunpoint from the previous evening until that morning, forcing her to withdraw money from an automated teller machine (ATM), and making her have sex with him.

Prior to trial, appellant's trial defense counsel submitted a written motion asking that the military judge preclude the government "from obtaining the written notes, report or other writing" regarding appellant's statements to Ms. Coleman, based on the psychotherapist-patient privilege.[3] The defense further requested that Ms. Coleman be prevented from testifying about appellant's statements based on the same privilege.

At a pretrial session pursuant to Article 39(a), UCMJ, the parties discussed the potential disclosure of Ms. Coleman's "intake notes" documenting her interview with appellant. The military judge found that appellant's statements to Ms. Coleman were not privileged and ordered that the notes be disclosed to the government. The military judge also ruled that the government would be allowed to elicit testimony during trial from Ms. Coleman about appellant's statements.

Appellant's defense counsel asked the military judge to reconsider his decision to allow Ms. Coleman to testify about appellant's admissions because Ms. Coleman did not advise appellant of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b),[4] prior to interviewing him. Trial defense counsel asserted:

---

1. Appellant was originally charged with, *inter alia*, robbery (The Specification of Charge IV) and assault with a dangerous weapon (The Specification of The Additional Charge). The members found him not guilty of the robbery alleged in The Specification of Charge IV, but guilty of the lesser-included offenses of wrongful appropriation and assault with a dangerous weapon. He was also convicted of assault with a dangerous weapon as alleged in The Specification of The Additional Charge.

2. The record does not indicate by whom Ms. Coleman was employed. However, the government asserted in its pleading that she was a "Level 1 care provider" who worked "under the supervision of licensed psychologists and psychiatrists at the Fort Polk Behavioral Health Center." Therefore, it appears that she was employed by, or at least worked on behalf of, the military.

3. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 513. This rule provides that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist ... in a case arising under the UCMJ, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition." Mil. R. Evid. 513(a).

4. Article 31(b), UCMJ, which is identical to the version in effect at the time of appellant's trial, provides:

No person subject to [the UCMJ] may interrogate, or request any statement from an accused

[H]er intake notes ... say when staffing him she went beyond her duty or the proper protocol for getting the necessary information. The extra information that she extracted went beyond her role as a health care provider and therefore made her as a personal instrument of law enforcement operating as family advocacy personnel. [Army Regulation 608–18[5]] does require that in those cases Article 31 Rights should be given because she was in an investigatory role at that point.

Without hearing any testimony on the issue, the military judge again denied the defense motion. The "intake notes" discussed by the parties were not marked or attached to the record as an appellate exhibit.[6]

## LAW

A "complete" record of proceedings must be prepared for every general court-martial case "in which the sentence adjudged includes death, a dismissal, a discharge, or (if the sentence adjudged does not include a discharge) any other punishment which exceeds that which may be adjudged by a special court-martial."[7] UCMJ art. 54(c)(1)(A), 10 U.S.C. § 854(c)(1)(A). Matters which are required to be included in and attached to a record for it to be characterized as "complete" are listed in R.C.M. 1103(b)(2)(D) and (b)(3). These matters include all trial and appellate exhibits which were "marked for and referred to on the record," whether or not they were received into evidence. R.C.M. 1103(b)(2)(D) and (b)(3).

■ Consequently, failure to include an exhibit in a record of trial creates a question of whether the record is complete. *United States v. McCullah*, 11 M.J. 234, 236 (C.M.A. 1981). When analyzing an omission from a record of trial, a reviewing court must determine whether it is "substantial." *Id.* at 236–37. The question of what constitutes a "substantial omission" is analyzed on a "case-by-case basis." *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F.1999). Insubstantial omissions do not prevent a record from being characterized complete. *McCullah*, 11 M.J. at 237. However, a substantial omission from the record of trial raises a presumption of prejudice which the government[8] must rebut. *United States v. Gray*, 7 M.J. 296, 298 (C.M.A.1979).

■ A substantial omission from a record of trial can affect appellate review of a court-martial in two ways. The first concerns "the

---

or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

5. Army Reg. 608–18, The Army Family Advocacy Program (1 Sept. 1995) [hereinafter AR 608–18]. At the time of appellant's trial, AR 608–18, para. 3.21d provided, in part:

> Except when not required by law or when delay would likely result in an immediate threat to the life or safety of an abused child, soldiers suspected of spouse or child abuse will be advised of their rights under Article 31, UCMJ, and of their right to counsel prior to being questioned about abuse offenses. Soldiers who are self-referrals will also be advised of their rights under Article 31, UCMJ, and of their right to counsel prior to being questioned about abuse offenses.

6. We previously ordered the government to provide a copy of the intake notes to be attached to the record to facilitate our review of the case. The government consulted with Ms. Coleman and determined that the intake notes could no longer be located.

7. Such records also "must include a 'verbatim' transcript of all court sessions (except sessions closed for deliberations or voting), including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge." *See United States v. Seal*, 38 M.J. 659, 662 (A.C.M.R.1993); Rule for Courts–Martial [hereinafter R.C.M.] 1103(b)(2)(B). This requirement has been interpreted as necessitating a "substantially verbatim" record. *United States v. Henry*, 53 M.J. 108, 110–111 (C.A.A.F.2000). The verbatim nature of the record in this case is not at issue.

8. "The military judge, trial counsel, defense counsel, and court reporter all bear some responsibility for producing an accurate and complete record of proceedings for our consideration." *Seal*, 38 M.J. at 662. However, it is ultimately the trial counsel, under the direction of the military judge, who is responsible for preparing the record of trial. *Id.* (citing R.C.M. 1103(b)(1)). Accordingly, the burden of rebutting the presumption of prejudice rests with the government.

statutory command regarding the type of record that must be made of courts-martial proceedings." *See id.* at 298. The requirement of a complete record is a jurisdictional prerequisite for a general court-martial that includes death, a discharge, a dismissal or any other punishment that exceeds that which could be imposed by a special court-martial. UCMJ art. 54. Thus, if the government fails to overcome the presumption of prejudice arising from an incomplete record, no part of a sentence described above can be affirmed. *See Gray,* 7 M.J. at 298.

■ The second potential effect concerns the sufficiency of the record for appellate review. *Abrams,* 50 M.J. at 364. "[T]he purpose of an appeal is to obtain a decision of the appellate tribunal on error claimed to have been committed in the forums below. If the transcript is sufficiently complete to present all material evidence bearing on all issues, minimal standards have been met...." *United States v. Nelson,* 3 U.S.C.M.A. 482, 486, 13 C.M.R. 38, 42, 1953 WL 2388 (1953). However, when a substantial omission from a record of trial affects an appellate court's review of a conviction, the government must also overcome the presumption of prejudice as to findings. *See Abrams,* 50 M.J. at 363–64 (remanding case to lower court with an order to complete the record after finding adequate appellate review could not be performed where military judge failed to attach personnel records of key government witness after denying the defense request for their disclosure); *McCullah,* 11 M.J. at 238 (stating that no finding of guilt could be upheld on the specifications to which an omitted exhibit related). Where the government cannot overcome the presumption of prejudice, corrective action regarding the findings must be taken. *Id.*

## DISCUSSION

### Omission from the Record of Trial

■ As an initial matter, we must decide if the military judge's failure to attach Ms. Coleman's intake notes to the record as an appellate exhibit constitutes an omission in the record of trial. A complete record must include all appellate exhibits. R.C.M. 1103(b)(2)(D). While the Manual for Courts–Martial does not define what should constitute an appellate exhibit, it is clear that the record must contain sufficient information for an appellate court to adequately review a military judge's rulings. *See Abrams,* 50 M.J. at 364; *United States v. Barron,* 52 M.J. 1, 6–7 (C.A.A.F.1999) (denying relief where failure to attach documents which were the subject of an unsuccessful defense discovery motion did not preclude "meaningful appellate review" of the issue). Consequently, the question of whether a document is required to be included in the record as an appellate exhibit is not answered solely by the military judge's decision to mark it as such. *See Abrams,* 50 M.J. at 364; *Seal,* 38 M.J. at 661, 663 (finding record incomplete where videotapes which were not "marked, offered, or received into evidence as exhibits" were played in court but not included in the record of trial).

■ Documents considered by a military judge in making a ruling affecting the rights of the accused at trial must be included in the record as appellate exhibits in order for this court to properly evaluate his decision. *See Abrams,* 50 M.J. at 364. *Cf. Gray,* 7 M.J. at 298 (quoting *United States v. Sturdivant,* 1 M.J. 256, 257 (C.M.A.1976)). Ms. Coleman's intake notes served as the basis for two defense motions. First, the defense moved to prevent the disclosure of the notes to the government on the basis of privilege in accordance with Mil. R. Evid. 513. When the military judge denied this motion, the defense asked the military judge to suppress appellant's statements to Ms. Coleman because she had failed to advise him of his rights in accordance with Article 31(b), UCMJ. The defense counsel specifically argued that the information contained in the intake notes demonstrated that Ms. Coleman went "beyond her role as a health care provider and therefore made her ... a personal instrument of law enforcement personnel." Without hearing any testimony on the issue,[9]

---

**9.** "When an appropriate motion or objection has been made by the defense [that an accused's statement was involuntary], the prosecution has

the military judge denied the motion, stating that he did not believe Article 31(b), UCMJ, rights warnings were required in the situation, "based on the evidence [he had] seen on the matter."[10] As a result, we find that the military judge erred in not marking and attaching the intake notes to the record as an appellate exhibit.

### Nature of the Omission

We must next decide if the failure to include the notes in the record of trial as an appellate exhibit constituted a substantial omission in the record of trial. In this case, we must consider whether the record is sufficiently complete to determine with reasonable certainty the issue of the admissibility of appellant's statement to Ms. Coleman.[11] *See Nelson*, 3 U.S.C.M.A. at 486, 13 C.M.R. at 42.

The defense counsel argued that the intake notes demonstrated that Ms. Coleman should have advised appellant of his rights under Article 31(b), UCMJ, prior to talking with him. The Court of Military Appeals[12] has addressed the issue of a civilian social worker's obligation to provide Article 31 rights to a soldier suspected of domestic abuse in two prior cases. Neither case involved any indication that the social worker acted for any purpose other than medical diagnosis or treatment. In *United States v. Raymond*, 38 M.J. 136, 140 (C.M.A.1993), the Court of Military Appeals cited previous cases which held that medical personnel questioning individuals for diagnostic purposes have no duty to provide Article 31(b), UCMJ, warnings and held that the social worker's "position

[was] so attenuated from those required to warn under Article 31[13] and Mil. R. Evid. 305[14] that no warning was required by him." In *United States v. Moreno*, 36 M.J. 107, 114 (C.M.A.1992), the court specified that the issue was whether the state-employed, civilian social worker's investigation "had 'merged' with the military's or whether she had become a *de facto* military operative." Ultimately, the court found that the two investigations had not merged, that the social worker appeared to have "remained in the mode of social worker," and therefore no Article 31(b), UCMJ, warnings were required. *Id.* at 115, 117.

On the other hand, the Court of Military Appeals has held that civilians employed by entities which are "governmental in nature and military in purpose" may be required to provide Article 31(b) warnings when they act "at the behest of military authorities and in furtherance of their duty to investigate crime." *United States v. Quillen*, 27 M.J. 312, 314 (C.M.A.1988); *see also United States v. Payne*, 47 M.J. 37, 43 (C.A.A.F. 1997). The court has identified "at least two situations in which Article 31 extends to the civilian investigator." *Quillen*, 27 M.J. at 314. These include "(1) [w]hen the scope and character of the cooperative efforts demonstrate that the two investigations merged into an indivisible entity; and (2) when the civilian investigator acts in furtherance of any military investigation, or in any sense as an instrument of the military." *Id.* (internal quotations and citations omitted).

the burden of establishing the admissibility of the evidence." Mil. R. Evid. 304(e).

10. At that point, the military judge apparently had before him the pleadings of the parties on the privilege issue, the summarized testimony of Ms. Coleman at the Article 32 investigation, and the intake notes. While the government is correct that the military judge never explicitly stated on the record that he examined the intake notes, we find that a reasonable reading of the record supports the conclusion that the military judge considered this evidence.

11. In relation to the defense motion to prevent the disclosure of notes to the government based on the psychotherapist-privilege, we find the omission of the notes to be insubstantial. Military Rule of Evidence 513(d) states that "when the communication is evidence of spouse abuse

... or in a proceeding in which one spouse is charged with a crime against the person of the other spouse," as in this case, there is no psychotherapist-patient privilege. Therefore, even without reviewing the intake notes, we find as a matter of law that this motion was without merit.

12. The United States Court of Military Appeals was renamed the United States Court of Appeals for the Armed Forces effective 5 October 1994.

13. *See, infra,* note 4.

14. Mil. R. Evid. 305, entitled "Warnings about rights," further explains when and under what circumstances the requirements of Article 31(b), UCMJ, are triggered.

The crucial question then was whether Ms. Coleman was acting for medical diagnosis and treatment, as in *Raymond* and *Moreno,* or whether she went beyond that into the role of an investigator for the military, more akin to *Quillen.*[15] The military judge did not address this issue. He stated that Article 31, UCMJ, rights are required to be provided only when a military accused is "interrogated or questioned with an investigatory intent or to elicit incriminating response [sic] in anticipation of a criminal prosecution." He concluded, "I don't believe, based on the evidence I have seen on the matter that was the situation."

The military judge denied the defense motion by saying:

> I find that the situation didn't involve the type of situation deemed by Article 31. There was no pressure of rank or duty or other similar relationship where there was pressure on the suspect to respond to a criminal inquiry. So it is denied on that basis as well. Like I said I will lay it out in more detail in my essential findings.

Unfortunately, the military judge never made any additional findings of fact or conclusions of law regarding this issue. There may have been facts which established that Ms. Coleman was not required to provide Article 31(b), UCMJ, warnings to appellant. However, because we cannot review all of the evidence the military judge considered on the issue, we cannot adequately review the issue. The only clue we have as to the content of the intake notes comes from the defense counsel's argument that they contained evidence that Ms. Coleman became an instrument of law enforcement. Because the notes

may have contained information which demonstrated that appellant's statements were taken in violation of Article 31(b), UCMJ,[16] and the military judge apparently relied on them in making his ruling, we find that the failure to attach the intake notes to the record of trial as an appellate exhibit was a substantial omission.

The fact that Ms. Coleman later testified at trial regarding appellant's statements did not render the omission of the intake notes insubstantial. At that point, the military judge had already ruled that appellant's statements were admissible, and consequently the parties did not focus on questioning Ms. Coleman regarding her purpose or intent in interviewing appellant. Moreover, there is nothing in Ms. Coleman's trial testimony which explains the defense counsel's argument that Ms. Coleman went beyond her role as a health care provider and became an instrument of law enforcement. Without seeing the notes themselves, we cannot be confident that they did not contain information beyond that relayed by Ms. Coleman in her testimony. As a result, the government must rebut the presumption that the omission prejudiced appellant as to the sufficiency of the record for appellate review.[17]

### Prejudice

■ "[W]ithout knowing the details of the evidence which has been omitted from the record of trial, an appellate court usually is unable to decide that the omission was not prejudicial to an appellant." *McCullah,* 11 M.J. at 237. However, the facts in this case are somewhat unusual because the omitted "exhibit" was only relevant on the interlocutory issue of whether appellant's statements

---

**15.** The fact that social workers may be subject to the requirements of Article 31, UCMJ, under certain circumstances is underscored by language in AR 608-18. *See, infra,* note 5.

**16.** Ms. Coleman testified that when she saw appellant she "went through preliminary information concerning confidentiality and then [she] asked him what could [she] do for him." On cross-examination, Ms. Coleman admitted that prior to speaking with appellant she spoke with his escort who "explained the situation." An "[i]nterrogation includes any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning." Mil. R. Evid. 305(b)(2).

In light of Ms. Coleman's knowledge of the "situation," her initial question fits this definition.

**17.** In cases where there is a substantial omission, but the record is sufficiently complete to allow proper appellate review, the government must still rebut the presumption of prejudice to overcome the statutory constraints on sentences which may be approved based on an incomplete record. *See Gray,* 7 M.J. at 298. Because the record in this case is not sufficiently complete to allow full appellate review, we do not reach the issue of the impact of the omission on appellant's sentence.

to Ms. Coleman should have been suppressed. Therefore, we can assess prejudice by accepting the truth of the defense argument and presuming that the military judge erred in admitting appellant's statements. *See generally United States v. Charles*, 40 M.J. 414 (C.M.A.1994).

The erroneous admission of a confession in violation of Article 31(b), UCMJ, is subject to a harmless error analysis. *United States v. Loukas*, 29 M.J. 385, 390 (C.M.A.1990). The defense did not assert that Ms. Coleman violated appellant's constitutional rights or in any way coerced or unlawfully induced appellant into making the statements, but only that she failed to comply with the requirements of Article 31(b), UCMJ. Therefore, we will analyze the error the same as any other nonconstitutional error. *See id.* at 390 (citing Article 59(a), UCMJ, 10 U.S.C. § 859(a)).[18]

For a nonconstitutional error to be found harmless, "the Government must demonstrate that the error did not have a substantial influence on the findings." *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003). "In determining the prejudice resulting from the erroneous admission of evidence, we weigh '(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'" *Id.* (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985))). Under this analysis, we cannot find such error to be harmless.

The government's evidence that appellant had committed the charged acts was powerful. The government's case against appellant consisted of two witnesses, the alleged victim and Ms. Coleman. Appellant's wife provided detailed, compelling, and credible testimony concerning her ordeal at the hands of appellant. This testimony was corroborated by the admission of a videotape showing the victim withdrawing money from an ATM with appellant, as well as the checks appellant instructed his wife to draft to herself.

However, the primary question in appellant's case was not whether he had committed the acts in question, but whether he should be held responsible for them. The main defense theory of the case from the beginning was that appellant lacked mental responsibility for the offenses. To support this theory, the defense called not one, but two credible and qualified mental health professionals, a clinical psychologist and a licensed psychiatrist. Both testified that at the time of the alleged offenses, appellant was suffering from a severe mental disease or defect and that, as a result, he could not appreciate the nature and quality and wrongfulness of his actions.

During closing argument, the trial counsel responded to the defense theory by emphasizing appellant's statements to Ms. Coleman. He argued, "And the wrongfulness of his action as seen in his statements to Ms. Coleman, 'I held my wife hostage.' Those words are not words that a person [uses who] doesn't appreciate wrongfulness. You wouldn't use words like, 'I held my wife

---

18. *In the context of a constitutional error, the government must demonstrate that the error was harmless beyond a reasonable doubt. United States v. Simmons*, 59 M.J. 485, 489 (C.A.A.F. 2004). *While we do not believe that a technical violation of the statutory Article 31(b), UCMJ, warning requirement automatically rises to the level of a constitutional error, we note that our superior court has not definitely stated whether such a violation should be analyzed using the constitutional or nonconstitutional harmless error standard. See United States v. Guyton–Bhatt*, 56 M.J. 484, 487 (C.A.A.F.2002) (holding that error in admitting statement taken in violation of Article 31(b), UCMJ, was harmless beyond a reasonable doubt); *United States v. Swift*, 53 M.J. 439 (C.A.A.F.2000) (stating that "[t]he primary source of the rights' warning requirement in military law is a statutory enactment, not constitutional adjudication," but nevertheless holding that the Article 31(b), UCMJ, violation was harmless "beyond a reasonable doubt"); *United States v. Pittman*, 36 M.J. 404, 408 (C.M.A.1993) (holding that admission of statement presumptively taken in violation of Article 31(b) was harmless beyond a reasonable doubt, but citing Article 59(a), UCMJ); *United States v. Remai*, 19 M.J. 229, 233 (C.M.A.1985). However, because we find that the government has failed to demonstrate that the admission of the statement to Ms. Coleman did not have a substantial impact on the verdict, logically it could not have been harmless beyond a reasonable doubt. Therefore, we would reach the same result applying either standard.

hostage,' if you didn't know and appreciate wrongfulness." The trial counsel repeated this theme in his rebuttal argument, saying:

[I]f he doesn't understand the nature and quality of his actions how is it that he can tell Ms. Coleman the very next day almost lock step parallel to what [appellant's wife] testified about happening? How is it he can tell Ms. Coleman about being in there and saying, 'I held my wife hostage?' ... Those questions [the experts] didn't answer for you.

Obviously a confession is among the most powerful forms of evidence that can be admitted against an accused. *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). However, in this case the harm did not flow from the fact that appellant made the admissions, but from the particular words and detail he used to describe the conduct. The trial counsel greatly increased the materiality of appellant's statements to Ms. Coleman by using appellant's own words to directly counter appellant's defense. Because the statements were used to undercut an otherwise strong defense claim of lack of mental responsibility, we find that the government has failed to demonstrate that the statements did not have a substantial impact on the verdict. As a result, the government has failed to rebut the presumption of prejudice arising from the incomplete record of trial.

Accordingly, the findings of guilty and the sentence are set aside. The same or different convening authority may order a rehearing. If the convening authority determines that a rehearing is impracticable, he may dismiss the Charges and their Specifications.

Judge JOHNSON and Judge MOORE concur.