# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DANIEL GASKINS**
**United States Army, Appellant**

ARMY 20080132

Headquarters, United States Army Southern European Task Force
Timothy Grammell and Gregg Marchessault, Military Judges
Lieutenant Colonel Harrold J. McCracken, Staff Judge Advocate (pretrial)
Colonel Harrold J. McCracken, Staff Judge Advocate (recommendation)
Major Sean T. McGarry, Acting Staff Judge Advocate (addendum)

For Appellant: William E. Cassara, Esquire (argued); Captain Elizabeth Turner, JA; William E. Cassara, Esquire, (on brief).

For Appellee: Captain Nicole L. Fish, JA (argued); Colonel Norman F.J. Allen, III, JA; Lieutenant Colonel Martha L. Foss, JA; Major Adam S. Kazin, JA; Captain Nicole L. Fish (on brief).

27 August 2010

----------------------------------
OPINION OF THE COURT
----------------------------------

HOFFMAN, Judge:

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of carnal knowledge, indecent acts with a child, and indecent assault, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

This case is before us for review pursuant to Article 66, UCMJ. Appellant has alleged, *inter alia,* a substantial omission from the record of trial rendering it incomplete within the meaning of Article 54, UCMJ. We return the record of trial to the convening authority for a limited hearing to determine whether substantial matters were omitted from the record and, if so, whether it is incomplete under Article 54, UCMJ.

**FACTS**

The court-martial panel found appellant guilty of carnal knowledge and indecent acts with the 12-year-old daughter of a fellow soldier and indecent assault on another female soldier. Following his conviction, the defense's sentencing case consisted of three witnesses (a captain, a chief warrant officer three, and appellant's brother), appellant's unsworn statement and the admission of Defense Exhibit A, appellant's "Good Soldier Book." During his unsworn statement, appellant described ten photographs contained in Defense Exhibit A. Though the panel received the exhibit for their consideration in sentencing, the exhibit was not included when appellant's record of trial was assembled.

In his Rule for Courts-Martial [hereinafter R.C.M.] 1105/1106 clemency submission, appellant's counsel noted Defense Exhibit A was missing from the record of trial. Counsel claimed the missing exhibit contained "a compilation of [appellant's] awards, certificates, letters of commendation and character letters from family and friends, as well as a number of photographs."

In response, the acting staff judge advocate (SJA) prepared an addendum to the SJA recommendation, noting Defense Exhibit A "could not be located." The SJA provided a memorandum describing the omitted exhibit for the record.[1] Additionally, the SJA provided appellant's Official Military Personnel File (OMPF) for the convening authority to review in an effort to supplement information pertaining to appellant's military background. Further, appellant's R.C.M. 1105 matters contained twenty-one letters of support. The convening authority reviewed the materials and approved the adjudged sentence without clemency.

**LAW**

A complete record of the proceedings and testimony must be prepared for any general court-martial resulting in a punitive discharge. UCMJ, art. 54(c)(1). A complete record includes "exhibits . . . which were received in evidence." R.C.M. 1103(b)(2)(D)(v). A substantially verbatim record is necessary to support a sentence which includes a punitive discharge or exceeds six months confinement. R.C.M. 1103(b)(2)(B) and 1103(f)(1). Article 19, UCMJ, states "[a] bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months may not be adjudged unless a complete record of the proceedings and testimony has been made . . . ." The requirement a record of trial be complete and substantially verbatim to support a sentence exceeding these limits amounts to a jurisdictional requirement that cannot be waived. *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000) (citing *United States v. Gray*, 7 M.J. 296 (C.M.A. 1979); *United*

---

[1] The "substitution memorandum" was written by the "Senior Court Reporter," rather than the court reporter at appellant's trial.

*States v. Whitney*, 48 C.M.R. 519 (C.M.A. 1974)).  When faced with an incomplete record, this court may order a new trial, order reconstruction of the record, or simply approve a sentence that meets the mandates of R.C.M. 1103, Article 19, and Article 54.  *See United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1980).

The test for determining whether the record is incomplete is whether the omitted matter constitutes a "substantial" omission from the record. *United States v. McCullah,* 11 M.J. 234, 237 (C.M.A. 1981).  Whether or not an omission is substantial is analyzed on a case-by-case basis.  *United States v. Embry*, 60 M.J. 976, 979 (Army Ct. Crim. App. 2005) (citing *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999)).  Omissions from the record of trial, which affect the rights of the accused at trial or make proper appellate review impossible are substantial omissions.  *See Abrams*, 50 M.J. at 363.  To evaluate whether an omission from the record is substantial, the court must "ascertain whether the omitted material was 'substantial,' either qualitatively or quantitatively," when considered in light of the rest of the record.  *Lashley*, 14 M.J. at 9.

A substantial omission from the record "raises a presumption of prejudice which the government must rebut."  *United States v. Cudini*, 36 M.J. 572, 573 (A.C.M.R. 1992) (citing *Gray,* 7 M.J. 296).  "Conversely, an insubstantial omission does not raise the presumption and does not change a record's characterization as complete." *Cudini*, 36 M.J. at 573 (citing *McCullah*, 11 M.J. at 237). Thus, before affirming any record of trial from which an exhibit is missing, this court must determine, first, whether the absence of the omitted exhibit is substantial and renders the record of trial incomplete, and, second, if so, whether the government has successfully rebutted the presumption of prejudice to the accused which automatically arises therefrom.

The court is well aware of the many cases finding a substantial omission when an exhibit is omitted.  *See United States v. Stoffer*, 53 M.J. 26 (C.A.A.F. 2000) (though the findings could be affirmed, absence of all of the defense sentencing exhibits was substantial as it pertained to sentence); *Abrams*, 50 M.J. 361 (substantial omission where military judge reviewed the military record of a key witness in camera, denying defense counsel's motion to review the record himself, and failed to attach the evidence in question to the record); *McCullah*, 11 M.J. 234 (omitted letter of dishonor in a worthless check case used to prove *mens rea* amounted to a substantial omission); *United States v. Seal*, 38 M.J. 659 (A.C.M.R. 1993) (omission of a videotape showing the accused flying during Desert Shield/Storm, which was admitted during the sentencing portion of the trial, was substantial).

However, when courts have found an omitted exhibit not in dispute or unimportant, these courts have further found the omission insubstantial.  *See Henry,* 53 M.J. at 111 (missing exhibits were not substantial omission where they were part

of a series of similar exhibits offered for the same evidentiary purpose); *United States v. White* 52 M.J. 713, 716 (Army Ct. Crim. App. 2000) (missing defense videotape of car interior found insubstantial, because the interior of the car was portrayed in the record by other means); *United States v. Johnson*, 33 M.J. 1017, 1019 (A.C.M.R. 1991) (missing flier, which was provided to the members, insubstantial given the military judge's preliminary instructions, the stipulation of fact, counsel's arguments, and the appellant's unsworn statement); *United States v. Harper*, 25 M.J. 895, 897-98 (A.C.M.R. 1988) (missing accused's personnel record insubstantial where it could be ascertained from military judge's comments that he examined a letter of reprimand reflecting accused was no longer qualified for reenlistment); *United States v. Carmans*, 9 M.J. 616, 621 (A.C.M.R. 1980) (missing photographic exhibits of stolen property insubstantial, because there was no contest regarding identity of property); *United States v. Henthorn* 58 M.J. 556, 559 (N. M. Ct. Crim. App. 2003) (missing twenty-four pornographic photographs insubstantial where the record was replete with descriptions of the general nature of the omitted photographs); *United States v. Burns*, 46 C.M.R. 492, 494 (N.C.M.R. 1972) (missing topographical chart showing location of victim's body was insubstantial omission where its "importance to the outcome of the case is considered minimal").

## DISCUSSION

If the absence of appellant's "Good Soldier Book" constitutes a substantial omission from the record, appellant may have suffered prejudice because the convening authority did not have an opportunity to review the contents of Defense Exhibit A as part of his clemency review. Further, appellant could be prejudiced if we as a court did not have an opportunity to review the exhibit as part of our consideration of appellant's sentence pursuant to Article 66, UCMJ.[2] *Abrams*, 50 M.J. 361 (failure of military judge to seal and attach military records of government's key witness, after denying defense request for their disclosure for impeachment purposes, made "proper appellate review impossible").

We begin our analysis by first finding there is an omission from appellant's record of trial, which did not cease to be an omission when a "substitute memorandum" was included in the record. A memorandum is typically insufficient

---

[2] The dissent suggests that appellant was also prejudiced because "the lack of a complete record 'transgress[es] a fundamental statutory right enjoyed by' appellant," (quoting and citing *McCullah*, 11 M.J. at 237). We do not believe *McCullah* stands for the proposition that any omission from a record is "fundamental." Instead, we conclude that only those omissions which are both substantial and prejudicial transgress an appellant's rights under Article 54. Appellant may have been prejudiced for the reasons we detail; however, an omission from the record is not in and of itself prejudicial.

to substitute for omitted material. *See Seal*, 38 M.J. at 661; *United States v. Williams*, 14 M.J. 796, 800-01 (A.F.C.M.R. 1982).

Thus, our next task is to determine whether or not the omission of this particular exhibit is substantial. In this case, however, we cannot complete this preliminary step because we do not know what, specifically, is missing. While we are certain that appellant's "Good Soldier Book" is missing, the contents of that book are not fully known. Though the test is clear, "a condition precedent to applying this test is the availability in the record of a sufficient description of the content of whatever matter has been omitted so as to enable this Court, or any other reviewing authority, to determine whether such matter could have materially prejudiced the substantial rights of the accused at trial." *Williams*, 14 M.J. at 798. We cannot presume we know the contents of appellant's specific "Good Soldier Book." *See Stoffer,* 53 M.J. at 27. The government, thus far, has not described the contents of the missing exhibit in adequate detail. Therefore, our options are to affirm only the limited sentence for an incomplete record per R.C.M. 1103, order a sentence rehearing, or order a *DuBay* hearing to determine if the matter is substantial and to potentially reconstruct the omission.[3]

In considering our options, we cannot agree with the dissent that the appropriate remedy based on the current record is to approve a sentence excluding discharge or confinement in excess of six months. We are not dealing with whether appellant should or could have been found guilty due to a missing merits exhibit; instead we consider whether omission of a sentencing exhibit affected the sentence as it relates to the convening authority's action and our review of appellant's sentence. In light of the seriousness of appellant's offenses, the substantial sentence he received, and the fact the omission in this case relates only to sentencing evidence rather than to appellant's guilt, we conclude an eleven and a half-year reduction in the sentence and disapproval of a punitive discharge is an extreme remedy insufficiently justified by the current record. The cases cited to by the dissent where this remedy was used are clearly distinguishable. The remedy in *Stoffer* was predicated on judicial economy in light of appellant's short sentence and comparatively long appellate delay. 53 M.J. at 28. The *Seal* case did not employ the remedy of mandating a drastically reduced sentence; instead it remanded the case to the convening authority to complete the record, or, alternately accept the drastic remedy of a substantially reduced sentence. 38 M.J. at 663. In light of these considerations, we choose to return the case for a *DuBay* hearing. *See* Appendix.

---

[3] We recognize an omission from the record may be tested for harmless error. *Stoffer*, 53 M.J. at 27. We believe it is in the interests of justice, however, to first return the case for additional fact finding as to the nature and content of the missing exhibit.

The government may overcome the presumption of prejudice by producing a copy of the exhibit or carefully reconstructing the omitted portion of the record. *United States v. Eichenlaub*, 11 M.J. 239, 240-41 (C.M.A. 1981); *Lashley*, 14 M.J. at 9; *Seal*, 38 M.J. at 662; *United States v. Griffin*, 17 M.J. 698, 699 (A.C.M.R. 1983); *United States v. Pearson,* 6 M.J. 953, 954 (A.C.M.R. 1979); *United States v. Harrow,* 62 M.J. 649, 655 (A.F. Ct. Crim. App. 2006); *Burns*, 46 C.M.R. at 498. Defense counsel should provide input in such a reconstruction. *United States v. DeWayne*, 7 M.J. 755, 756-57 (A.C.M.R. 1979). The government may likewise overcome a presumption of prejudice by demonstrating from additions to the record any missing portion of the exhibit was neither qualitatively nor quantitatively substantial. *Lashley*, 14 M.J. at 9. That will necessarily entail determining, in some detail, what was contained in the exhibit. A *DuBay* hearing will provide an appropriate forum for both sides to participate. It will also develop the record to facilitate our further review and ultimate determination of any appropriate remedy.

Ordering a *Dubay* hearing to determine if an omission is substantial, to determine if reconstruction is possible, and to facilitate any reconstruction is hardly unprecedented. *See United States v. Charles* 40 M.J. 414, 419 (C.M.A. 1994) (case remanded to Court of Military Review to "order affidavits from the military judge and trial counsel reconstructing the lost exhibit, if possible, and clarifying the ambiguity created by the judge's memorandum for the record"); *United States v. Church*, 23 M.J. 870 (A.C.M.R. 1987) (court ordered limited hearing to determine whether omitted sidebar conference dealt with substantial matters, and, if so, whether reconstruction of the discussion was necessary and practicable); *Williams*, 14 M.J. 796 (record returned for a *DuBay* so parties could attempt to reconstruct the missing exhibit rebutting evidence of the accused's peaceful character in attempted murder trial); *United States v. Kyle*, 32 M.J. 724, 725 (A.F.C.M.R 1991) (*DuBay* permitting reconstruction of exhibit would be appropriate, but issue mooted when appellant's guilty pleas found improvident); *United States v. Widdowson*, NMCCA 200700252, 2009 WL 855959 (N. M. Ct. Crim. App. 31 Mar. 2009) (unpub) (*DuBay* to reconstruct record where tape recording of appellant's trial was completely blank was successful where post-*DuBay*, appellant failed to identify any missing, additional, or misstated elements of the final authenticated record of trial).

We find ourselves in a similar position to the courts in the above cited cases in which *DuBay* proceedings were ordered. We lack the factual predicate from which to determine the substance of the exhibit in question and whether the omission was, therefore, substantial or insubstantial. As a result we deem it appropriate to return the record of trial to the convening authority for a limited hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967). The hearing will focus on the contents of the missing exhibit. The *DuBay* military judge will consider the OMPF and letters from appellant's friends and family considered by the convening authority, as well as any other evidence gathered pursuant to the hearing.

The military judge at the hearing will make findings of fact and conclusions of law as appropriate. Thereafter, the record will be returned to this court for further review.

**CONCLUSION**

The record of trial is returned to the convening authority for action consistent with this decision.

Senior Judge CONN, Senior Judge JOHNSON, Judge COOK,[4] and Judge BAIME concur.

HAM, Judge, dissenting[5]:

I dissent. A *Dubay*[6] hearing is inappropriate under the facts of this case and is almost certainly a waste of time. Despite the exhaustive search for Defense Exhibit A at the trial level, and the government's continued opportunity during the pendency of this appeal to either find Defense Exhibit A or submit an adequate reconstruction of it, the exhibit is still missing and no adequate reconstruction has been forthcoming. Defense Exhibit A's absence from the record is unequivocally a substantial omission, and the government's efforts over the last two and one-half years have not overcome the resulting presumption of prejudice.

Appellant's court-martial ended on 8 February 2008, and the convening authority took action on 8 October 2008. While preparing the record of trial, the government discovered that Defense Exhibit A was missing. As a result, post-trial documents reveal that the government conducted an exhaustive search for Defense Exhibit A in the months preceding the convening authority's action. On 11 August 2008, the senior judge advocate on the ground concluded that "many efforts by both parties to track down this exhibit have not been met with success." These efforts included obtaining defense counsel's recollection of the contents of Defense Exhibit A, and the government contacting appellant while in confinement and inquiring as to his knowledge of the whereabouts of the exhibit. In the exhibit's place, the acting staff judge advocate submitted appellant's OMPF to the convening authority. Defense counsel fully addressed Defense Exhibit A's absence in its post-trial

---

[4] Judge COOK took final action in this case prior to his retirement.

[5] Judge HAM took final action in this case prior to her permanent change of station.

[6] *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

submission, and there is no doubt that all parties at the trial level were acutely aware of the law in this area and the importance of this exhibit.[7]

In addition to the "many efforts" to find Defense Exhibit A or its contents at the trial level, which involved "both parties," the case has been pending at this court since 24 November 2008. The defense filed its brief before this court on 30 April 2009, which again raised the issue of the missing exhibit; the government responded on 28 December 2009, and a three-judge panel of this court held oral argument on 22 April 2010. Although two issues were set for argument, virtually the entire argument centered on the issue of the missing exhibit, and all three judges on the panel which heard the argument join in dissent. Once again, all parties on appeal were acutely aware of the law in this area and the importance of the exhibit. The government has made no further submissions to the court since the argument over three months ago.

Just as we presume the competence of defense counsel, we must also presume the competence of the many government counsel who have worked on this case, both at the trial and appellate levels. *Cf. Strickland v. Washington*, 466 U.S. 668 (1984). We must presume those counsel have undertaken all reasonable efforts to complete the record in this case. We must presume that these many government counsel considered the efficacy of both a post-trial Article 39(a), UCMJ, session at the trial level and of a *Dubay* hearing at the appellate level. The government pointedly has *not* requested a *Dubay* hearing in this case. Nor has the government at any point moved this court to admit additional documentation concerning the contents of Defense Exhibit A.

The case is now before us and I believe we should decide it. Applying the law as set forth in the UCMJ and the Rules for Courts-Martial, I would affirm only so

---

[7] The complete search at the trial level for the missing Defense Exhibit A distinguishes this case from those cited by the majority in support of its decision to order a *Dubay* hearing. The cases the majority relies upon contain no evidence of a trial level search for the exhibit. *See United States v. Church*, 23 M.J. 870, 871 (A.C.M.R. 1987); (missing sidebar discussion); *United States v. Kyle*, 32 M.J. 724, 725-26, n.4 (A.F.C.M.R. 1991) (military judge failed to attach sealed exhibit to record of trial—court notes that "[h]ad anyone detected the error timely, the error might have been corrected through a post-trial session . . . "); *United States v. Charles*, 40 M.J. 414, 416 (C.M.A. 1994) (missing sealed exhibit). In *United States v. Williams*, the court notes there "[t]he record contains no indication that any trial participant, other than government counsel, had even noted the exhibit's omission prior to the time the record was forwarded to the convening authority's staff judge advocate . . ." and after that, "no trial participants were asked to assist in reconstructing the missing exhibit's contents . . . ." 14 M.J 796, 800 (A.F.C.M.R. 1982). Those are simply not the facts here.

much of the sentence as provides for confinement for six months, forfeiture of $884 per month for six months, and reduction to E-1. I cannot agree that applying the law Congress promulgated and the President implemented is an "extreme remedy." Congress determined the appropriate remedy for an incomplete record and we are bound by it. Whether we agree with the result is not the question; it is the appropriate result under the law.

The majority has instead decided to launch an appellate "rescue mission" to allow the government yet another opportunity to carry its burden and complete the record in this case. *See United States v. Burris*, 21 M.J. 140, 145 (C.M.A. 1985). *Dubay* hearings are not meant as a vehicle to administer appellate "CPR" to the government's case. Nor should this court, in ordering a *Dubay* hearing, be in the business of instructing the government how it should best attempt to carry its burden. *See United States v. Gaskins*, ARMY 20080132 (Army Ct. Crim. App. 27 Aug. 2010) (order) (unpub.) (Appendix). Specifically, this court should not direct the government to search for specific documents in order to reconstruct the missing exhibit.[8] Additionally, this court should not choose the questions it directs the *Dubay* judge to answer with an eye toward finding the facts it needs to *affirm the sentence* in the case, rather than simply *finding the facts* the majority asserts are necessary to decide the legal issue presented.[9] *Id.* In particular, because there is a substantial omission and the burden has shifted to the government to overcome the resulting presumption of prejudice, I do not believe this court should *direct* appellant or his trial defense counsel to assist the government in carrying its burden.[10] In my view, these areas "exceed[] the bounds of permissible fact finding."

---

[8] For example, the *Dubay* order directs the government to "obtain copies of all of appellant's awards, certificates, and letters of commendation both from his service in the Army and in the Marine Corps . . . . and shall announce any willingness to stipulate to documents it is unable to obtain at that time."

[9] For example, the *Dubay* order directs the military judge to determine "Whether the clemency letters submitted with appellant's Rule for Courts-Martial 1105 petition were the same, or substantially the same, as the extenuation/mitigation letters included in Defense Exhibit A as submitted at the time of trial; if not substantially the same, what the differences were."

[10] The *Dubay* order directs the military judge to determine "[w]hat appellant [and] trial defense counsel . . . recall were the specific contents of Defense Exhibit A." This question is particularly problematic, since the post-trial documents contain the defense counsel's contemporaneous recollection of Defense Exhibit A's contents. Any further probing of counsel's recollection at this late date is a waste of time. Further, the *Dubay* order directs the parties "to cooperate . . . to reconstruct" the missing exhibit. While this order might not violate appellant's constitutional rights,

(continued . . .)

*United States v. Andreozzi*, 60 M.J. 727, 743 (Army Ct. Crim. App. 2004) (Barto, J., dissenting). "Notwithstanding the broad mandate of Article 66, UCMJ, the proper function of this court is adjudication, not investigation." *Id*. at 745. It is simply not this court's business to save the government from itself.

Fully aware that a description of a missing exhibit is insufficient under the law to overcome a presumption of prejudice, the majority sidesteps that difficulty by instead ordering a *Dubay* hearing to investigate the step prior to that—whether missing Defense Exhibit A is a "substantial omission." If it is not, the burden never shifts to the government to overcome the resulting presumption of prejudice. Although it is ordering the government to find documents in an attempt to reconstruct Defense Exhibit A—a task the government has been unable to complete to this stage—the majority is also ordering witnesses to provide as complete a description of the exhibit's contents as possible. The majority transparently desires to then apply case law finding omissions insubstantial where the record contains a complete description of the exhibit. The description necessary to avail itself of this principle, should occur, however, in the record during the trial, not two and one-half years later.

This dissent provides an in-depth examination and discussion of the law surrounding the requirement for a "complete record." Both the law and the facts of this case lead me to conclude that there is a substantial omission from the record of trial rendering it incomplete in contravention of Article 54, UCMJ, and the government has not carried its burden to overcome the presumption of prejudice to appellant. In contrast to the majority, I would conclude that the appropriate result under the law is to affirm a limited sentence.

## FACTS

After a vigorously contested trial on the merits, the members found appellant guilty of the charges and specifications against him, which included carnal knowledge and indecent acts with a child against one victim, and indecent assault against a second victim. The government's sentencing case consisted of appellant's

---

(. . . continued)

it does not make it the right thing to do. This is particularly the case when it is highly speculative and unlikely that counsel will be able to recall anything in addition to that reflected in his contemporaneous submissions on the issue which are already included in the post-trial documents attached to the record. These submissions are what counsel will most likely review in order to refresh their recollection of these matters. Moreover, not only is the government now tasked with overcoming the presumption of prejudice that arises due to a substantial omission, the preparation of a complete record is the government's (specifically, the trial counsel's) responsibility in the first place. *See* UCMJ art. 38(a).

Enlisted Record Brief (ERB) and testimony from two witnesses—T.S. and appellant's first sergeant. The defense called as witnesses a captain and a chief warrant officer three, who both testified concerning appellant's rehabilitative potential. In addition, the defense called appellant's brother, also a noncommissioned officer in the Army, who testified briefly about his and appellant's upbringing.

Prior to appellant's eight-page unsworn statement, the defense offered and the military judge admitted in evidence Defense Exhibit A, appellant's "Good Soldier Book," in extenuation and mitigation. There was no description on the record concerning the contents of Defense Exhibit A, including the number or types of documents included in it. In his unsworn statement, appellant described ten photographs contained in Defense Exhibit A, including photographs of appellant with his disabled son, photographs of appellant reenlisting while deployed to Kuwait, and of appellant while deployed with the 82d Airborne Division to Iraq. Other than the discussion of the photographs in Defense Exhibit A, appellant did not otherwise discuss or describe its contents. Appellant also briefly discussed his prior service in the Marine Corps as well as some of his service in the Army.

Two military judges, the first presiding over arraignment and initial motions, the second presiding over the remaining motions and the trial, authenticated the record of trial. None of the errata sheets noted that Defense Exhibit A was missing from the record of trial.

In his Rule for Courts-Martial [hereinafter R.C.M.] 1105/1106 clemency submission to the convening authority, appellant's counsel noted that Defense Exhibit A was missing from the record of trial, and argued to the convening authority that he was limited to approving a nonverbatim record sentence. The defense described the missing defense exhibit as "a compilation of [appellant's] awards, certificates, letters of commendation and character letters from family and friends, as well as a number of photographs."

In response, the acting staff judge advocate (SJA) prepared an addendum to the SJA recommendation. In the addendum, the acting SJA agreed Defense Exhibit A "could not be located" after appellant's trial concluded. The acting SJA described Defense Exhibit A, as defense counsel had in his submission, as "a compilation of the accused's awards, certificates, letters of commendation, character letters, and a number of photographs both from [appellant's] Army career and his time in the Marine Corps." The acting SJA advised the convening authority that "[i]t is unclear what happened to this exhibit and many efforts by both parties to track down this exhibit have not been met with success." Further, the acting SJA noted that the "[d]efense counsel cites this exhibit to be the most crucial evidence used in the sentencing portion of the appellant's case," and defense counsel aver that its

omission renders the record "no longer verbatim," requiring a sentence "no greater than that which could be adjudged at a Special Court-Martial . . . ."

In response to defense counsel's contention, the acting SJA advised the convening authority as follows:

> According to [R.C.M.] 1103(a)(2), under the discussion portion, a verbatim transcript includes "all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge." The request for inclusion of exhibits is addressed in [R.C.M.] 1103(a)(2)(D) and specially contemplates exhibit descriptions as sufficient for a complete record. The loss of Defense Exhibit A does not impact either the merits of the case or the verbatim requirements under the provision[s] of [R.C.M.] 1103. Therefore, the transcript remains an accurate, verbatim record of all proceedings that occurred throughout the trial. The substitution memorandum describing the Defense Exhibit A is included . . . .[11]

---

[11] When asked during oral argument if the acting SJA's advice to the convening authority was correct, government counsel responded only that the acting SJA's "conclusion" was correct. The government was wise not to defend the acting SJA's misleading and incomplete "analysis" of R.C.M. 1103 and, in particular, his notable failure to advise the convening authority of the statutory requirement for a "*complete* record of the proceedings and testimony" in this case as well as the law applicable to that requirement. *See* UCMJ art. 54(c)(1)(A) (emphasis added); R.C.M. 1103(b)(2)(A). In fact, R.C.M. 1103 states that "a complete record shall include . . . exhibits or, *with the permission of the military judge*, copies, photographs, or descriptions of any exhibits which were received in evidence . . ." R.C.M. 1103(b)(2)(D) (emphasis added). In this case, the military judge permitted copies of Defense Exhibit A to be substituted in the record for the original, but made no mention that a "description" of Defense Exhibit A was permitted in this case. In any event, the legal issues that arose from the missing exhibit are as set forth here and not as described by the acting SJA. While the acting SJA has an obligation to comment on defense allegations of legal error, he has no obligation to discuss them in any detail or provide any "analysis or rationale" for his advice. R.C.M. 1106(d)(4); *United States v. Diaz*, 56 M.J. 795, 804 (Army Ct. Crim. App. 2002) ("While an analysis of the SJA's rationale is not required, some sort of minimal response stating agreement or disagreement is required.") (citing *United States v.*

(continued . . .)

The undated "substitution memorandum" to which the acting SJA referred was drafted at some point after appellant's trial by the "Senior Court Reporter," who was *not* the court reporter at appellant's trial.[12]  There is no evidence that the "substitution memorandum's" drafter had any personal knowledge whatsoever of the facts and circumstances surrounding the missing exhibit.  Nonetheless, the memorandum attempted to lay blame for the missing exhibit on the defense, stating that "the court reporter placed the exhibit on the defense table in order for a copy to be made."  The memorandum then attempted to describe the contents of Defense Exhibit A based on appellant's unsworn statement at trial.  Specifically, the memorandum described ten photographs included in Defense Exhibit A as described by appellant during his unsworn statement.

> In addition to several photos, the defense concurs that the exhibit contained records of SSG Gaskins' Marine Corps service, including awards, college transcripts, letters/ memos of commendation, photos, etc.  Also included were several awards and decorations which SSG Gaskins received throughout this [sic] military career in the Army. The defense is willing to provide a generic recollection of what was in Defense Exhibit A but is not willing to speculate on specific contents.  The Service Member's Official Military Personnel File [OMPF] has been included in the allied papers and is indicative of the awards and honors for which [sic] he received and included in the original Defense Exhibit A.

Accordingly, the acting SJA recommended the convening authority grant no clemency and approve the adjudged sentence.  The convening authority agreed.

In his response to the acting SJA's addendum, defense counsel characterized the government's "substitution memorandum" as "inaccurate and misleading" both in its attempt to lay blame for the missing exhibit at the defense's feet and in its attempt to "recreate" the exhibit.  Specifically, the defense contended that "neither party admitted [appellant's OMPF] into evidence at trial, yet the [g]overnment attempts to use it to 're-create' evidence that was admitted at trial, namely [Defense

---

(. . . continued)

*Catrett*, 55 M.J. 400, 407-08 (C.A.A.F. 2001)), *rev'd on other grounds*.  *See also United States v. Hill*,  27 M.J. 293 (C.M.A. 1988).  When an SJA chooses to do so, however, his advice should be complete and accurate.  *Cf. United States v. Emminizer*, 56 M.J. 441 (C.A.A.F. 2002).

[12] The record indicates the court reporter for the merits and sentencing portions of appellant's trial was Ms. C.D.; the memorandum is signed by Sergeant First Class A.G. as the "Senior Court Reporter."

Exhibit] A." In addition, the defense contended that "[t]he [g]overnment's [memorandum for record] does not constitute a reasonable substitute or reconstruction of the missing exhibit, as is required under the law," and "the acting SJA misinterpret[ed] [R.C.M.] 1103 and ignore[d] established precedent," specifically *United States v. Stoffer*, 53 M.J. 26 (C.A.A.F. 2000).

The defense contended that the "substitution memorandum" and the OMPF were inadequate for two reasons. First, the government "is supposed to describe what is missing" from the record of trial, and, instead, the memorandum repeats descriptions of photographs contained in the record of trial, but "does nothing to outline what is missing . . . ." Second, the defense contended that

> [t]he [g]overnment's [memorandum for record] and [appellant's] OMPF do not cover half of what was included in DE A. Staff Sergeant Gaskins earned several military awards and training certificates while on active duty in the U.S. Marine Corp[s]. Neither his Army OMPF nor the [g]overnment's [memorandum for record] includes any documents from his four (4) years on Marine active duty.[13] Furthermore, multiple civilian education certificates, college transcripts, certificate[s] of achievement and military awards from SSG Gaskin's 9 years in the active duty Army were included in DE A but not documented in his OMPF or the [g]overnment's [memorandum for record]. Specifically missing are [Army Achievement Medal]s, [Army Commendation Medal]s, [Army Good Conduct Medal]s, Iraq Campaign Medal, Humanitarian Service medals, Foreign Service awards and Foreign Jump wings, a [Combat Action Badge], civilian training certificates for electronics training, college transcripts, numerous certificates of appreciation from civilian organizations like the Special Olympics, etc. Finally, DE A contained numerous letters of support from family, friends, and members of the military. Neither the [g]overnment's [memorandum for record] nor [appellant's] OMPF allude to any of those letters, specifically the content and source of each letter.

---

[13] We note appellant's OMPF does include a Department of Defense Form 214 Certificate of Release or Discharge from Active Duty, appellant's release from active duty service in the Marine Corps. It summarized his awards, military schooling, and service history, but it did not contain any further documents.

14

The defense attached several documents in its response to the acting SJA's addendum, including an electronic mail (email) message from the civilian defense counsel (CDC) who represented appellant at trial. The CDC addressed the email message to the SJA and other personnel in the SJA's office, as well as the military judges, military defense counsel, and court reporters involved in the case. The CDC stated that "no defense counsel took possession of the exhibit," "SSG Gaskins denies taking possession of the exhibit," and the defense only generated one copy of Defense Exhibit A or "the defense would have provided a copy for the record rather than seeking permission of the court for the substitution." Finally, the defense stated that it did not maintain any "separate index of the contents of Defense Exhibit A." In the email that precipitated the CDC's response, also attached to the defense response to the acting SJA's addendum, the government added that "After checking with [appellant], his brother who was a defense witness, and the unit, Defense Exhibit A remains unaccounted for."

Appellant's OMPF, which the convening authority noted he specifically reviewed prior to taking action in appellant's case, included, in the convening authority's words, "NCOERs covering the period from April 2001 to January 2007, Service School Academic Evaluation Reports from [Primary Leadership Development Course] and [Basic Noncommissioned Officer Course], orders awarding the Good Conduct Medal, Promotion Orders from Sergeant to Staff Sergeant, and orders awarding the Senior Parachute Badge." Pointedly *not* included in the OMPF as presented to the convening authority, as defense counsel noted, were any of the *twenty-six* awards and decorations listed on appellant's ERB (Prosecution Exhibit 8) other than the two the convening authority listed, nor any other certificates concerning appellant's military or civilian education as reflected on his ERB.

**LAW AND DISCUSSION**

A "complete record of the proceedings and testimony shall be prepared . . . in each general court-martial case in which the sentenced adjudged includes . . . a discharge . . . ." UCMJ art. 54(c)(1); R.C.M. 1103(b)(2)(A). *See also* UCMJ art. 19 ("[a] bad conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months may not be adjudged unless a complete record of the proceedings and testimony has been made . . ."). Missing exhibits relate to whether the record of trial is complete, rather than verbatim, a separate requirement under the Manual for Courts-Martial. *See United States v. Cudini*, 36 M.J. 572, 573 (A.C.M.R. 1992) (citing *United States v. McCullah*, 11 M.J. 234, 236 (C.M.A. 1981)); R.C.M. 1103(b)(2)(B). A "complete record" includes "[e]xhibits, or, with the permission of the military judge, copies, photographs, or descriptions of any exhibits which were received in evidence and any appellate exhibits." R.C.M. 1103(b)(2)(D)(v).

When a record of trial is not "complete" within the meaning of Article 54, UCMJ, there are three potential ways in which the deficiency may impact an appellant. First, the lack of a complete record "transgress[es] a fundamental statutory right enjoyed by" appellant. *See McCullah*, 11 M.J. at 237 (discussing requirement of Article 19, UCMJ, for a complete record in a special court martial); UCMJ art. 54(c)(1). *See also United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (quoting *United States v. Gray*, 7 M.J. 296, 298 (C.M.A. 1979)); *United States v. Sturdivant*, 1 M.J. 256, 257 (C.M.A. 1976); *United States v. Embry*, 60 M.J. 976, 980 (Army Ct. Crim. App. 2005).[14] In addition, an incomplete record impacts appellant's opportunity to present clemency matters to the convening authority post-trial. *See* R.C.M. 1105, 1106. Finally, an incomplete record prohibits proper appellate review in our court. We are tasked with affirming "only such findings of guilty and the sentence or such part of the sentence, as [this court] finds correct in law and fact and determines, *on the basis of the entire record*, should be approved." UCMJ art. 66(c) (emphasis added). We are also tasked with determining whether an error of law "materially prejudices the substantial rights of an accused." UCMJ, art. 59(a). Our performance of both of these statutory duties is potentially thwarted when we are faced with an incomplete record. *See United States v. Santoro*, 46 M.J. 344, 345-46 (C.A.A.F. 1997) (affirming lower court decision concluding that, due to missing exhibits and other deficiencies in the record, it was unable to assess the appropriateness of the sentence so affirmed a sentence of "no punishment"); *Embry*, 60 M.J. at 980 ("Documents considered by a military judge in making a ruling affecting the rights of the accused at trial must be included in the record as appellate exhibits in order for this court to properly evaluate his decision." In light of the missing appellate exhibit the military judge considered in his ruling on a motion to suppress, court set aside findings and sentence).

Due to the critical nature of and necessity for a complete record, in its absence, a service member's sentence may not include "any . . . punishment which exceeds that which may otherwise be adjudged by a special court-martial," Article 54(c)(1)(A), UCMJ, "except that a [punitive] discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved." R.C.M. 1103(f)(1). *See also* R.C.M. 1107(d)(4); *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) ("Records of trial that are not substantially

---

[14] The majority's attempt to dilute Chief Judge Everett's statement in *McCullah* is unconvincing. *United States v. Gaskins*, __ M.J. __, slip op. at 4, n.2 (Army Ct. Crim. App. 27 Aug. 2010). Of course, the "fundamental statutory right" to a "complete record" is transgressed only when the record is "incomplete," a term of art defined by R.C.M. 1103 and decades of case law, set forth in depth in this opinion. In fact, in *McCullah*, the court found a "substantial" omission. 11 M.J. at 237. It was that "substantial omission" that rendered the record "incomplete" under the law "and this incompleteness transgressed a fundamental statutory right enjoyed by McCullah," *i.e* the statutory right to a complete record. *Id*.

verbatim or are incomplete cannot support a sentence that includes a punitive discharge or confinement in excess of 6 months.") (citing R.C.M. 1103(b)(2)(B)).[15] Remedies other than a limitation on sentence, however, may be appropriate. *See United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982) (noting remedies for substantial omissions include a new trial or reconstruction of the missing parts of the record). *See also* discussion of appropriate remedy, *infra*. "The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived." *Henry*, 53 M.J. at 110.

Not every omission from the record of trial renders it incomplete. "The test as to whether an omission from a record of trial is a fatal jurisdictional error turns on whether the omission is substantial." *United States v. Sanders*, 37 M.J. 628, 630 (A.C.M.R. 1993) (citing *Gray*, 7 M.J. at 297). "[A]n insubstantial omission . . . does not prevent characterizing a record as complete." *United States v. Seal*, 38 M.J. 659, 662 (A.C.M.R. 1993) (citations omitted). *See also McCullah*, 11 M.J. at 237. Conversely, a "substantial omission in a record of trial raises a presumption of prejudice to an accused which the government must rebut." *Seal*, 38 M.J. at 662.

The government—more specifically, the trial counsel—is statutorily responsible for preparing the record of trial. UCMJ, art. 38(a) ("The trial counsel . . . shall, under the direction of the court, prepare the record of proceedings"). *See also* R.C.M. 1103(b)(1); *Seal*, 38 M.J. at 662. Accordingly, since "the Government bears responsibility for preparing the record, it is fitting that every inference be drawn against the Government with respect to the existence of prejudice because of an omission." *McCullah*, 11 M.J. at 237 (citing *Gray*, 7 M.J. at 298). *See also United States v. Boxdale*, 22 U.S.C.M.A. 414, 47 C.M.R. 351 (1973). Whether a record of trial is complete is a question of law we review de novo. *Henry*, 53 M.J. at 110.

With this legal framework in mind, there are three separate issues in this case. First, does the absence of Defense Exhibit A constitute a "substantial omission?" Second, if there is a substantial omission, has the government overcome the resulting presumption of prejudice to appellant? Third, if the government fails to

---

[15] This provision was amended in 2002, but the amendments do not affect the validity of the court's statement. 2002 Amendments to the Manual for Courts-Martial, United States, 67 Fed. Reg. 18773 (April 11, 2002). Although in 2002, the President raised the maximum punishment for a special court martial from, *inter alia*, confinement for six months to confinement for one year, both Congress, in Article 19, UCMJ, and the President, in R.C.M. 1103 and 1107, kept the requirement for a complete record and the limitation on the sentence the convening authority could approve at the six-month level.

overcome the presumption of prejudice to appellant, what is the appropriate remedy in this case?

### A. *Whether Missing Defense Exhibit A is a Substantial Omission.*

Whether or not an omission is substantial is analyzed on a case-by-case basis. *Embry*, 60 M.J. at 979 (citing *Abrams*, 50 M.J. at 363). With that said, there is no consistent analytical methodology apparent in the numerous cases addressing this issue, although the many cases facing this issue seem to break down into two different analytical camps.

The analysis begins with a statement of the obvious—when attempting to determine whether an omission from the record of trial is substantial "we don't know what we don't know." *See Stoffer,* 53 M.J. at 27 (refusing to "presume" what information was contained in missing defense sentencing exhibits and concluded their omission was substantial); *Abrams*, 50 M.J. at 364 ("We cannot review the omission for its substantiality . . . because we have no records to review."). Under the facts of this case we could, therefore, determine that the presumption of prejudice stemming from a substantial omission "automatically exists." *Williams*, 14 M.J. at 799 (concluding that, in the absence of an accurate description of a lost exhibit, it is impossible to determine whether its absence constitutes a substantial or insubstantial omission, and applying a presumption of prejudice).

The majority attempts to use this missing knowledge as a shield to conclude it cannot determine whether Defense Exhibit A's omission is "substantial," and thus the sword of a *Dubay* hearing is necessary. In fact, both *Stoffer* and *Williams* concluded that, due to lack of knowledge of the contents of the missing exhibit, the omission was *substantial*, and then moved to consider whether the government could overcome the presumption of prejudice. 14 M.J. at 801; 53 M.J. at 27. *Williams*, like the majority, opted for a *Dubay* hearing to allow the government to attempt to overcome the presumption of prejudice. 14 M.J. at 801. Again, as stated earlier, in *Williams* there was no evidence of an extensive search for the exhibit at the trial level.[16] *Id.* at 800.

Other cases determine whether there is a substantial omission by "ascertain[ing] whether the omitted material was 'substantial,' either qualitatively or quantitatively." *Lashley*, 14 M.J. at 9. This analytical methodology provides a way to evaluate the qualitative importance of a particular exhibit or testimony to a

---

[16] A WESTLAW keycite search of *Williams* reveals the Air Force has not cited it since 1998, and the Army has never cited it previously in a published case. Only one published case from any service cites *Williams*, a Navy-Marine case that was later reversed by C.A.A.F. *See United States v. Dearing*, 60 M.J. 892, 904 (N.M. Ct. Crim. App. 2005), *rev'd on other grounds*, 63 M.J. 478 (C.A.A.F. 2006).

particular case in light of the entire record. On the one hand, for example, if a similar sentencing exhibit was missing in two different cases, our consideration of the "qualitative" nature of the exhibit in light of the entire record of those cases could potentially lead us to conclude that the exhibit's omission is substantial in the first case, and insubstantial in the second case. On the other hand, the same analysis applied to similar missing exhibits on findings might not yield different results. This is the essence of the command to scrutinize whether the missing exhibit is substantial on a "case by case basis."

Applying the *Lashley* framework to different scenarios, courts have determined that certain types of missing exhibits or testimony constitute substantial omissions, even where the court does not state that it is engaging in the "qualitative/ quantitative" paradigm. Where, for example, missing testimony "related directly to the sufficiency of the Government's evidence on the merits," it is a substantial omission. *Id*. Similarly, when a missing exhibit provided prima facie evidence of the required *mens rea* for a criminal offense, its absence was a substantial omission, *McCullah*, 11 M.J. at 237, as is missing defense witness testimony. *Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R. at 352 (holding that missing testimony of five principal "witnesses to the accused's defense of alibi" and "proceedings in connection with a motion for a mistrial" was a substantial omission). In addition, a missing exhibit relied upon by a military judge in denying a motion to suppress was also a substantial omission, because the missing exhibit rendered the record not sufficiently complete "to determine with reasonable certainty" the legal issues on appeal. *Embry,* 60 M.J. at 981. In *Abrams*, in answering the question whether a missing appellate exhibit relevant to potential discovery violation was a substantial omission, the court noted that it "involve[d] a ruling by the [military] judge affecting the rights of the accused at trial." 50 M.J. at 363 (quoting *Sturdivant*, 1 M.J. at 257). In finding the omission substantial, the court's concern was that the exhibit's omission "[made] proper appellate review impossible." *Id*. at 364.[17]

On the other hand, where a missing exhibit is "merely demonstrative evidence on an issue . . . not in dispute," "unimportant," or "uninfluential," when viewed in light of the entire record, or of "minimal importance to the outcome" of the case, it is qualitatively insubstantial. *United States v. White*, 52 M.J. 713, 715-16 (Army Ct. Crim. App. 2000) (demonstrative videotape).[18] Similarly, an omission of an exhibit

---

[17] *See also Gray*, 7 M.J. at 298 (unrecorded sidebar conference is a substantial omission where it "involve[es] a ruling by the judge affecting rights of the accused at trial . . . .") (quoting *United States v. Richardson*, 21 U.S.C.M.A. 383, 45 C.M.R. 157 (1972)); *Sturdivant*, 1 M.J. at 257 (argument concerning court member challenges).

[18] *See also Henry,* 53 M.J. at 111 (missing exhibits were not substantial omission

(continued . . .)

is insubstantial where a verbal description on the record of the subject matter of the exhibit was "completely adequate and [the exhibit] did not provide any meaningful clarification of [the] testimony." *Burns*, 46 C.M.R. at 497.[19] The majority is latching on to this case law, incorrectly in my view.

Particularly relevant to the inquiry here, both this court and our superior court, in contrast to the majority, have determined that missing defense sentencing exhibits are substantial omissions from the record of trial. *See Seal*, 38 M.J. at 663 (omission of a defense videotape exhibit showing the accused flying during Desert Shield/Desert Storm admitted during sentencing substantial omission); *Stoffer*, 53 M.J. 27 (finding a substantial omission where three defense exhibits admitted at sentencing were missing from the record).

Any analysis of the quantity or quality of Defense Exhibit A is hampered by our lack of knowledge of its contents as *Stoffer*, *Abrams,* and *Williams* recognized. In contrast to the majority, this leads us to overwhelmingly conclude that its omission is substantial. First, Defense Exhibit A was the sole defense exhibit admitted during sentencing and considered by the panel in crafting appellant's sentence. Second, while ten photographs were briefly described on the record, including photographs of appellant deployed on combat tours, there is no further description on the record of the rest of Defense Exhibit A. In fact, the remaining contents of what was characterized as a three-inch thick, three-ring binder were only vaguely described by the government and appellate defense counsel in post-trial documents. The record does not contain an index of the exhibit or detailed description of the documents it included. "[W]e will not 'presume' what information was contained" in Defense Exhibit A. *Stoffer*, 53 M.J. at 27.

---

(. . . continued)
where they were part of a series of similar exhibits offered for the same evidentiary purpose); *United States v. Burns*, 46 C.M.R. 492 (N.C.M.R. 1972) (missing topographical chart showing location of victim's body was insubstantial omission where its "importance to the outcome of [the] case is considered minimal"); *Sanders*, 37 M.J. at 630 (finding insubstantial omission where record failed to reflect "a short recess when the military judge excused the court members, recessed the court, and then called the court to order"); *Cudini*, 36 M.J. at 573 (holding that "the failure to attach the flyer as an appellate exhibit is not a substantial omission"); *United States v. Johnson*, 33 M.J. 1017, 1019 (A.C.M.R. 1991) (same).

[19] *See also White*, 52 M.J. at 716 (subject of missing videotape was "portrayed in the record by means other" than the videotape); *United States v. Harper*, 25 M.J. 895, 898 (A.C.M.R. 1988) (holding that failure to attach missing personnel record as appellate exhibit was not a substantial omission where the court could "ascertain" its contents from the military judge's comments); *United States v. Baker*, 21 M.J. 618, 620 (A.C.M.R. 1985) (holding that missing court member's written question was not a substantial omission where the military judge asked the question on the record).

The defense in its post-trial submission, however, did describe the missing exhibit as containing "a compilation of [appellant's] awards, certificates, letters of commendation and character letters from family and friends, as well as a number of photographs," and the government did not then, and does not now disagree with that description. It is obvious that defense counsel offered the exhibit to highlight appellant's approximate thirteen years of honorable service in the Army and the Marine Corps, including service deployed in combat. Defense counsel also offered the exhibit to describe appellant's family life and his character and rehabilitative potential, all in order to mitigate his punishment. I cannot and will not conclude that under the facts of this case the defense submission is "unimportant" or "uninfluential." *Cf. White*, 52 M.J. at 716.

Defense Exhibit A's omission clearly prejudiced appellant in all three of the areas an incomplete record potentially impacts. First, the convening authority was not able to consider the materials contained in Defense Exhibit A in mitigation, and the defense was not able to call his attention to them; second, this court's duty and ability to review the appropriateness of appellant's sentence is hampered, thereby making "proper appellate review impossible," *Abrams*, 50 M.J. at 364;[20] and third, appellant's statutory right to a complete record is fettered. *McCullah*, 11 M.J. at 237; UCMJ art. 54(c)(1). One of the repercussions of the exhibit's omission is that our Article 66, UCMJ, review is hindered because we cannot fully consider the mitigating effect of appellant's "particular acts of good conduct or bravery and evidence of [appellant's] reputation or record . . . in the service for efficiency, fidelity, subornation, temperance, and courage . . ." *See* R.C.M. 1001(c)(1)(B). Accordingly, Defense Exhibit A's absence is a substantial omission.

### B. Whether the Government Has Overcome the Presumption of Prejudice

We would conclude that the substantial omission of Defense Exhibit A from the record of trial raises a rebuttable presumption of prejudice against the government. *Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R. at 352. Although we would apply "every inference . . . against the Government with respect to the existence of prejudice because of an omission," *McCullah*, 11 M.J. at 237 (citing *Gray*, 7 M.J. at 298), we would next decide whether the remedy the government implemented in this case overcomes the presumption. The government's remedy consists of the "substitution memorandum," described earlier, the assertion in the memorandum that

---

[20] Defense Exhibit A's absence makes it impossible for this court to properly conduct a sentence appropriateness review, a critical part of the court's statutory duty under Article 66, UCMJ. "Generally, sentence appropriateness should be judged by '*individualized consideration*' of the *particular accused* 'on the basis of the nature and seriousness of the offense and the *character of the offender*.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (emphasis added) (citing *United States v. Mamaluy,* 10 U.S.C.M.A. 102, 106-07, 27 C.M.R. 176, 180-81 (1959)).

appellant's OMPF "is indicative of the awards and honors for which [sic] he received and included in original Defense Exhibit A," and the government's attaching appellant's OMPF to the Addendum.

Once again, the numerous cases in this area do not provide a uniform analytical methodology to apply to decide this issue. In fact, a number of cases appear to conflate the issue of whether an omission is substantial with the question of whether the government has overcome the presumption of prejudice. *See* note 16, *infra*.

As with the issue of whether the omission of Defense Exhibit A was substantial, we would begin with the premise that "without knowing the details of the evidence which has been omitted from the record of trial, an appellate court usually is unable to decide that the omission was not prejudicial to an appellant." *McCullah*, 11 M.J at 237. Moreover, we are cognizant that "the threshold the Government must meet is substantial essentially because 'what is of concern here is not the sufficiency of the record for purposes of review, but with the statutory command regarding the type of record that must be made of courts-martial proceedings.'" *Adams*, 50 M.J. at 363 (quoting *Gray*, 7 M.J. at 298).

We discern from the case law in this area, however, one consistent manner in which the government may overcome the presumption of prejudice—a timely and "meticulous" recreation of the missing exhibit or testimony at issue.[21] For example,

---

[21] This court has also indicated that the government can overcome the presumption of prejudice where a missing exhibit "add[s] little or nothing to the testimony found elsewhere in the record." *White*, 52 M.J. at 716. In *White*, although we held that a missing demonstrative exhibit was not a substantial omission, when we assumed arguendo, that it was a substantial omission, the government overcame the presumption where "extensive testimony . . . provided a thorough basis" for the court to evaluate the evidentiary purpose of the missing exhibit, it was "of minimal importance to the outcome of [the] case, and its omission in no way impede[d] our appellate review." *Id*. In our view, the obiter dicta in *White* applies more appropriately to the conclusion that the omission was not substantial, rather than that the same rationale allowed the government to overcome the presumption of prejudice. *See also Harrow*, 62 M.J. at 655 (government overcame presumption of prejudice from missing testimony concerning a government motion where "based solely upon the record, [the court knew] the general nature of the evidence and the judge's ruling on it" which was in favor of the defense); *United States v. Henthorn*, 58 M.J. 556, 560 (N.M. Ct. Crim. App. 2003) (government overcame presumption of prejudice due to missing pictures of child pornography where, in a guilty plea, "record is replete with descriptions of the general nature of the omitted photographs,

(continued . . .)

the government was able to rebut the presumption of prejudice that arose when the military judge's announcement of sentence, as well as his remarks prior to and following his announcement were not recorded, by a "summarization [that] meticulously detail[ed] what matters were discussed," and where there was not the "slightest hint anywhere in the record that there was any disagreement . . . as to accuracy and completeness of the summarization." *United States v. Eichenlaub*, 11 M.J. 239, 241 (C.M.A. 1981) (noting also that "[a]t this stage of the trial, where testimony and legal rulings are not involved, the substance, rather than the exact words uttered by the judge, was critical to the accused's rights.").[22] A meticulous recreation, while unable to take the place of a missing exhibit or testimony, overcomes the presumption of prejudice by serving as an adequate substitute for that missing exhibit or testimony.

In contrast, where the government is unable to "meticulously" recreate missing testimony or exhibits, it does not meet its burden of overcoming the presumption of prejudice to appellant that arises when there is a substantial omission in the record. For example, in *United States v. Snethen*, the government attempted during a post-trial session held under Article 39(a), UCMJ, to reconstruct "at least an hour" of a pretrial suppression motion that was not recorded at the time of the motions hearing, including testimony of two witnesses and argument. 62 M.J. 579, 580, 581 (A.F. Ct. Crim. App. 2005). Unfortunately, "[t]he problem was not discovered until nearly two months after the court-martial adjourned," and the post-trial session was not convened until a third month passed. *Id*. at 580. The military

---

(. . . continued)
that is, graphic images of children engaged in sexual activity with adults"). In contrast, where a missing sentencing exhibit was at issue, and we could not "say that the appellant's [or other] testimony in extenuation and mitigation is sufficiently duplicative of the contents of [the exhibit] to minimize [its] omission," the government does not rebut the presumption of prejudice. *Seal*, 38 M.J. at 663.

[22] *See also Lashley*, 14 M.J. at 9 (holding that "due to the unusual combination of factors present," record as reconstructed was "substantially verbatim" and government overcame presumption of prejudice); *Burns,* 46 C.M.R. at 493 (in addition to finding missing exhibit "unimportant" and "uninfluential," a "recreated authenticated copy of the missing exhibit" was attached to the record); *United States v. Harrow*, 62 M.J. 649, 654-55 (A.F. Ct. Crim. App. 2006) (finding that the government overcame the presumption of prejudice that arose when witness' testimony was lost by "meticulous" recreation of testimony at trial while testimony was "still fresh in everyone's mind"); *United States v. Griffin*, 17 M.J. 698, 699-700 (A.C.M.R. 1983) (finding the government overcame presumption of prejudice caused by missing witness testimony by "prompt remedial action" of recalling witness to go through testimony again and instructing members to disregard original testimony— "the reconstruction provided a verbatim record").

judge attempted the reconstruction by utilizing his trial notes, materials from both the prosecution and defense, the court reporter's notes, as well as recalling the two witnesses whose testimony was lost. *Id.* The court held that, "despite [the military judge's] best efforts to reconstruct the record, the hurdles were too great," and the government did not overcome the presumption of prejudice from the substantial omission. *Id.* at 581. The government was unable to make the record complete and "'substantially verbatim' given the importance of the lost testimony and arguments, the lengthy duration of the [missing testimony and arguments] and the length of time between the trial and the reconstruction efforts." *Id.* As noted earlier, neither the convening authority nor the military judge in this case utilized the option of a post-trial session in an attempt to either locate or recreate Defense Exhibit A.

Specifically relevant to our analysis here, numerous cases from this court and other service courts, as well as our superior court all hold that a "memorandum" attempting to describe a missing exhibit or testimony—particularly one the government drafted—is insufficient to recreate a missing exhibit or testimony, does not equate to an adequate substitute, and does not overcome the presumption of prejudice. *Seal*, 38 M.J. at 661, 663 (trial counsel's affidavit describing missing defense sentencing exhibits (videotapes) insufficient to overcome presumption of prejudice). *See also Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R. at 352 (trial counsel's "reconstruction" of five defense alibi witnesses' testimony was insufficient to carry government's burden to overcome presumption of prejudice that arose from the substantial omission); *Gray*, 7 M.J. at 298 (defense counsel's affidavit setting forth substance of missing sidebar conversation insufficient to overcome presumption of prejudice); *Williams*, 14 M.J. at 800-01 (trial counsel's "memorandum for record" attempting to describe missing exhibit's contents is insufficient to overcome presumption of prejudice; court notes government memorandum "made no effort, whatsoever, to shoulder the burden" of overcoming the presumption of prejudice).

By any measure, we would find the government has not met its burden here. The government's "substitution memorandum" and appellant's OMPF do not come close to the type of "meticulous" recreation necessary to overcome the presumption of prejudice due to a substantial omission. Several reasons support this conclusion. First, the government does not even aver that its "substitution memorandum" constitutes a recreation of Defense Exhibit A, meticulous or otherwise. Rather, their contention is that it is, in essence, "good enough" to constitute an adequate substitute. Second, the exhibit included information about appellant that was not described or duplicated in the record or replicated in his OMPF or anywhere else, including, obviously, in the government's "substitution" attempt. *See Seal*, 38 M.J. at 663 ("[A]ppellant's testimony in extenuation and mitigation is [not] sufficiently duplicative of the [defense sentencing exhibits] to minimize the omission of the [evidence].") For example, Defense Exhibit A contained detailed information about appellant's Army and Marine Corps service, his civilian education and college transcripts, his award certificates and other certificates of appreciation, and

"numerous letters of support from family, friends, and members of the military," none of which the government even attempted to recreate, and none of which are detailed in the government's "substitution memorandum." Third, the exhibit was not indexed and no documentation exists as to the number of pages it contained. Nothing in the record sufficiently identifies the full content of the three-inch thick binder. Fourth, although appellant during his unsworn statement briefly described some photographs included in Defense Exhibit A, "[i]nclusion of the substance of a portion of the record of proceedings dealing with material matter" does not make the record complete. *See Sturdivant*, 1 M.J. at 257. Fifth, we recognize that our court has previously highlighted the particularly mitigating effect of the "'special distinction' of combat service." *Seal*, 38 M.J. at 662 (citing *United States v. Demerse*, 37 M.J. 488, 492 (C.M.A. 1993)). Sixth, as defense counsel noted in their response to the Addendum, the government's attempt at a "substitution" included "copies of documents not admitted during trial . . . namely [appellant's] Official Military Personnel File." As with the defense's general description of Defense Exhibit A's contents, the government did not then and does not now dispute the defense's contention. Accordingly, the government's "substitution" effort is not in any way an adequate substitute for Defense Exhibit A.

Moreover, the directions of the majority to the *Dubay* judge to, for example, find "reasonable substitutes" for Defense Exhibit A appear to ignore the many apparent substitutes that these cases hold are insufficient. Nor would appellant's Enlisted Record Brief ever be a sufficient substitute. In another context, this court has already stated that, even if accurate, a personnel record "is a poor substitute for the actual citation/commendation accompanying any award . . . ." *United States v. Young*, 50 M.J. 717, 728 (Army Ct. Crim. App. 1999).

Our superior court noted in *McCullah*, "an omission is often entwined inextricably with the entire trial and taints all the findings of guilt . . . ." 11 M.J. at 237. However, in this case, "it is clear beyond a reasonable doubt that the lack of completeness relates" only to appellant's sentence and not to the findings of guilt. *Id.* Upon our review of the sentence, however, the government has failed to rebut the presumption of prejudice. *See Stoffer*, 53 M.J. at 27.

### C. Appropriate Remedy

As we would find a substantial omission from the record of trial and the government has failed to overcome the presumption of prejudice against appellant, we would next examine the appropriate remedy.

A review of case law regarding remedies for incomplete records reveals a variety of options, often depending on the type of omission involved. We may (1)

set aside the findings and sentence and order a rehearing;[23] (2) affirm findings and order a sentencing rehearing;[24] (3) set aside the sentence and remand the case to the convening authority to complete the record and if unable to do so, approve a nonverbatim sentence;[25] (4) approve a nonverbatim record sentence;[26] or (5) approve a sentence of no punishment.[27] It is within the court's discretion to decide the appropriate remedy, to include reassessing the sentence to a level not exceeding that permissible in a trial reported by a nonverbatim transcript. *Gray*, 7 M.J. at 298; *Sturdivant*, 1 M.J. at 257. *See also Snethen*, 62 M.J. at 581. We would exercise the court's discretion to approve a nonverbatim record sentence in this case; this remedy, we believe, would be the appropriate one given the particular circumstances of this case.

As the omission of Defense Exhibit A does not affect the findings in this case, the first remedial option is not appropriate. We could and would affirm the findings here.

The next option is for this court to return the case for a sentencing rehearing. *See Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R at 352 (authorizing a rehearing where defense alibi witness testimony missing from the record). Although neither this court or our superior court has exercised this option, particularly when faced with missing defense sentencing exhibits, this is the remedy the government requests and defense concedes could be appropriate in some circumstances. Courts have found this remedy appropriate where the record is missing defense witness testimony and the court orders a rehearing on findings and sentence. *Id*. *See also Embry*, 60 M.J. at 984 (missing appellate exhibit); *Snethen*, 62 M.J. at 581.

We carefully considered the propriety of this particular remedy—the only other potential appropriate remedy, in our view—under the facts of this case and would decline to order it. Appellant has approximately thirteen years service in two separate branches of the military and has completed two overseas deployments in support of Operation Iraqi Freedom. Using all of its available powers and resources,

---

[23] *See Embry*, 60 M.J. at 984; *Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R. at 352. This court could also set aside any affected findings and reassess the sentence for the remaining findings or order a sentence rehearing. *See McCullah*, 11 M.J. at 238.

[24] *See* R.C.M. 1103.

[25] *See Seal*, 38 M.J. at 663. *See also Williams*; 14 M.J. at 801 (ordering *DuBay* hearing to find missing exhibit); *Abrams*, 50 M.J. at 364 (order to government to find missing exhibit).

[26] *See Stoffer*, 53 M.J. at 28.

[27] *See Santoro*, 46 M.J. at 345.

the government has been unable to adequately or substantially recreate Defense Exhibit A, including even the basics of appellant's Army service that were apparently part of the exhibit. We note with particular concern and dismay the state of appellant's OMPF, which the government claims is "indicative of the awards and honors for which [sic] [appellant] received and included in original Defense Exhibit A." The most glaring omission in the government's substitution attempt—although not the only one—is the OMPF's failure to include nearly all of the twenty-six awards and decorations listed on appellant's ERB, including his award of the Combat Action Badge.

Many of the missing documents the defense described as included in Defense Exhibit A, such as awards, decorations, and certificates, should have been in appellant's OMPF, and they are not. Even at this stage of appellate review, when government counsel have had months of additional time to locate government-produced and government-maintained documents, and seek to admit them for our consideration, they have not done so.

We recognize that under certain circumstances, a military judge could craft remedial measures to ensure a full and fair sentencing hearing. *Cf. United States v. Douglas*, 68 M.J. 349 (C.A.A.F. 2010) (crafting appropriate remedial measures when faced with allegation of unlawful command influence); *United States v. Murphy*, No. 2007-03, slip op. at 16 (A.F. Ct. Crim. App. 22 December 2008) (unpub.) (holding that where defense sentencing evidence in mitigation was unavailable due to government's conduct, the military judge did not abuse his discretion by limiting the maximum sentence to no punishment). In this case, however, we would conclude that due to the specific nature of the lost exhibit, remedial measures would not guarantee appellant a full and fair rehearing on sentence and adequately protect his critical, unique, and substantial right to present evidence in mitigation as set forth in R.C.M. 1001(c).

The other two cases with factual situations most similar to appellant's are *Seal* and *Stoffer*. Both involved missing defense sentencing exhibits, both found the omission substantial and that the government did not overcome the presumption of prejudice. Neither opinion's majority even considered the propriety of ordering a sentencing rehearing, or even listed it as a viable option. *Seal* returned the case to the convening authority to either complete the record or affirm a nonverbatim record sentence. 38 M.J. at 663. *Stoffer* affirmed a nonverbatim record sentence on its own, rather than return the case to the service court for sentence reassessment. 53 M.J. at 28. These remedies are in contrast to that where defense witness testimony on the merits is missing, and the court ordered a rehearing on findings and sentence. *Boxdale*, 22 U.S.C.M.A. at 415, 47 C.M.R. at 352.

We see the difficulties inherent in ordering a rehearing when faced with missing defense exhibits, rather than testimony. Witnesses can be recalled at a

rehearing to testify anew. In the appropriate case, the defense might also overcome a missing defense exhibit at a rehearing. For example, during a sentence rehearing, appellant might be able to recreate portions of what his counsel represented Defense Exhibit A contained. Appellant might also be able to find copies of the same or substantially similar photos he originally submitted and once again receive substantially similar letters of support to submit to the sentencing authority; likewise, appellant may also be able to locate his civilian education transcripts. If unable to locate these, he may make appropriate motions for relief to the military judge, or the judge, sua sponte, may take appropriate action to protect appellant's substantial right to present evidence in mitigation. Those actions could potentially include limiting the maximum adjudged sentence to "no punishment," if, in the sound exercise of his discretion, the military judge concluded that was the necessary remedy if appellant is unable to effectively present his sentencing case in mitigation due to the government's lack of care.

Although we would decline to speculate what we might decide in a different case with different facts, that kind of "do-over" is not the problem here. The problem and our conclusion that a "do-over" is an inappropriate remedy in this case is this simple fact: it is fundamentally unfair and unjust to task appellant to locate, recreate, or otherwise find adequate substitutes for all of the lost *government* documents, awards, and certificates when the *government* itself was unable after trial—and apparently still remains unable—to do so. Unlike the majority, we conclude that the government has already had its chance to find these documents or provide an acceptable substitute for the missing exhibit. Under these facts, it is of little comfort to appellant that his maximum approved sentence at a rehearing would be limited to his sentence as initially approved by the convening authority, when appellant's ability to mount a comprehensive sentencing case in mitigation is stymied by the government. UCMJ art. 63; R.C.M. 810(d). We would refuse to "shift the burden" of the government's carelessness to appellant by ordering a rehearing on the record before us, and would decline to exercise our discretion in that manner in this case.

Similarly, the third potential option and that chosen by the majority, returning the case to the convening authority to complete the record, is also an inadequate and especially inappropriate remedy in this case. In cases where there is some likelihood the missing evidence can be retrieved or reconstructed, courts have returned the cases for completion of the record. *Abrams*, 50 M.J. at 364 (remanding case to lower court ordering government to produce missing exhibit); *Seal*, 38 M.J. at 663 (returning case to convening authority to either complete the record or approve a nonverbatim sentence where record of trial was missing a defense exhibit videotape of appellant flying during Desert Storm/Shield admitted during sentencing); *Williams*, 14 M.J. at 801 (returning the case for a *DuBay* hearing to reconstruct the missing exhibit and rebut the presumption of prejudice arising from its omission).

In this case, the convening authority and his legal advisor have already had the chance, and presumably made their best attempt to complete the record. In fact, the acting SJA advised the convening authority, "It is unclear what happened to this exhibit and many efforts by both parties to track down this exhibit have not been met with success." Further, we would find the government's attempts to substitute instead a memorandum and appellant's OMPF prior to action to be completely and woefully insufficient. Unlike the majority, we disagree with the useless exercise of giving the government another opportunity to retrieve or recreate now—more than two years after trial—what it was unable to retrieve or recreate in the trial's immediate aftermath, and what the government has been unable to retrieve or recreate during the pendency of appellant's case before this court. *Cf. Snethen*, 62 M.J. at 581 (stating as one reason that government did not overcome presumption of prejudice "the length of time between trial and reconstruction efforts"). While there may exist some circumstances where the convening authority or a *Dubay* hearing could, at this late stage, retrieve or meticulously recreate missing evidence, it is apparent that those circumstances do not exist here. We see nothing to be gained by returning this record to the convening authority for another attempt to complete it. Based on the record before us, we would conclude Defense Exhibit A is irretrievably lost and the convening authority is unable to meticulously recreate it.

We also would decline to approve a sentence of no punishment in this case, our fourth option. Though fault for the lost exhibit lays solely at the government's feet, this is not a case where our affirming a sentence of "no punishment" is the correct appellate remedy. While the loss of Defense Exhibit A deprives us of our ability to complete our statutory duty to examine the approved sentence for appropriateness, we are confident that this is not a case where this court would conclude a sentence of "no punishment" is appropriate. Unlike the *Santoro* court, faced with a record in extensive and pervasive disarray, it is not necessary to "negat[e] all punitive aspects of the sentence" to remove any possible prejudice to appellant at our level of review. 46 M.J. at 346.

Given the particular landscape of this case, we believe the facts and law leave us with but one remedy—affirm a nonverbatim record sentence. The government bears responsibility for the record, and the government is liable for the consequences when it does not shoulder its responsibility.[28] The consequences of poor

---

[28] This court has previously warned trial counsel and court reporters about their responsibilities with regard to administration of the trial record. *United States v. Carroll*, 40 M.J. 554, 557 n.8 (A.C.M.R. 1994) ("Failure to comply with regulatory mandates with respect to a verbatim record of trial will preclude affirmance of a punitive discharge."); *United States v. Yarbrough*, 36 M.J. 1071, 1075 (A.C.M.R. 1993) (Crean, J. concurring). We have seen an alarming number of records of trial

(continued . . .)

administration and sloppy record preparation—on full display here—ultimately "deny society a full measure of justice because [we are left] with little choice but to perform radical surgery . . . on the sentence" in this case. *Id.* at 348.

For all these reasons, I would not give the government another opportunity to either show Defense Exhibit A's omission is insubstantial, or to carry its burden of overcoming the presumption of prejudice I would conclude exists in this case, which is both inappropriate and a waste of time. I would affirm a sentence in accordance with the law as promulgated by Congress and as further implemented by the President. Accordingly, I dissent.

Judge GIFFORD concurs.

TOZZI, Chief Judge, dissenting:

I join with the legal conclusions and proposed remedy set out in the dissenting opinion of Judge Ham. I write separately to highlight my differing characterization of the remedy ordered by the majority in this case.

I do not agree with the majority that a *Dubay*[29] hearing is appropriate in this case. The government has had more than ample time and possesses adequate resources to have remedied the substantial omission in this record of trial by now, all to the prejudice of the Appellant. I agree with Judge Ham that the appropriate remedy in this case is to approve a nonverbatim record sentence in accordance with R.C.M. 1103 (f)(1). I differ, however, with Judge Ham's characterization of the majority's effort in this case as an "appellate rescue mission" and appellate "CPR." This case presents a close issue upon which reasonable minds can differ. It is my sincere hope that the *Dubay* hearing ordered by the majority will provide additional

---

(. . . continued)

that reach us for decision that are either missing exhibits or testimony or the attached exhibits are not what they purport to be. *United States v. Hudgins*, ___ M.J. ___ (Army Ct. Crim. App. 25 Mar. 2010); *United States v. Miller*, ARMY 20090286 (Army Ct. Crim. App. 20 May 2010) (unpub.); *United States v. Zepeda*, ARMY 20080129 (Army Ct. Crim. App. 28 Apr. 2009) (unpub.); *United States v. White*, ARMY 20061313 (Army Ct. Crim. App. 19 Apr. 2010) (order) (unpub.); *United States v. Loggins*, ARMY 20080866 (Army Ct. Crim. App. 7 Jan. 2010) (order) (unpub.); *United States v. Anderson*, ARMY 20080669 (Army Ct. Crim. App. 5 Jan. 2010) (order) (unpub.). As we said in *Carroll*, "There is no excuse for an exhibit to be omitted from a record of trial. Incidents of poor administration reflect adversely on the United States Army and the military justice system." 40 M.J. at 557.

[29] *United States v. Dubay*, 17 U.S.C.M.A. 146, 37 C.M.R. (1967).

information this court can rely upon to fulfill its statutory obligations under Article 66, UCMJ.

Judge SIMS concurs.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

**APPENDIX**

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DANIEL GASKINS**
**United States Army, Appellant**

ARMY 20080132

---------------
ORDER
---------------

WHEREAS:

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of carnal knowledge, indecent acts with a child, and indecent assault, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

Appellant has alleged to this court, *inter alia,* a substantial omission from the record of trial rendering it incomplete under Article 54, UCMJ, as his "Good Soldier Book," admitted as Defense Exhibit A during the defense sentencing case, was not included in appellant's record of trial.

NOW, THEREFORE, IT IS ORDERED:

1. That the record of trial is returned to The Judge Advocate General for such action as is required to conduct a limited hearing pursuant to *DuBay*;

2. That the *DuBay* military judge will determine the following:

   a. What appellant, trial defense counsel, trial counsel, the court reporter, and the military judge recall were the specific contents of Defense Exhibit A;

   b. What were the contents of Defense Exhibit A;

c. Whether the clemency letters submitted with appellant's Rule for Courts-Martial 1105 petition were the same, or substantially the same, as the extenuation/mitigation letters included in Defense Exhibit A as submitted at the time of trial, and if not substantially the same, what the differences were.

d. Whether Defense Exhibit A can be fully or substantially reconstructed. The military judge and the parties will cooperate at the *DuBay* hearing to reconstruct Defense Exhibit A and attach it to the Record of Trial. Reasonable substitutes for missing portions of the exhibit may include live extenuation/mitigation witness testimony, stipulations of expected testimony, or stipulations of fact.

e. If Defense Exhibit A has been substantially rather than fully reconstructed the military judge will make findings of fact detailing how much of the exhibit has been reconstructed and specific findings detailing what items have not been reconstructed. Additionally, the military judge will state in the findings of fact and conclusions of law whether the reconstructed Defense Exhibit A amounts to a substantial omission from appellant's Record of Trial, rendering it incomplete under Article 54, UCMJ.

3. That the government shall obtain copies of all of appellant's awards, certificates, and letters of commendation both from his service in the Army and in the Marine Corps. The government shall serve copies of these documents on the defense no later than seven (7) days before commencement of the hearing and shall announce any willingness to stipulate to documents it is unable to obtain at that time. If the government is unable to obtain these documents, they are directed to explain to the military judge in writing, and in detail, what efforts were taken to obtain the documents and why they were unable to do so.

4. That the *DuBay* military judge will permit and/or order the presentation of witnesses and evidence, and make rulings as appropriate.

5. That the hearing will be concluded no later than sixty (60) days from the date of this Order.

6. That, at the conclusion of the proceedings, the record, with an authenticated verbatim transcript of the hearing, will be expeditiously returned to this court for further review.

HAM, Judge, with whom TOZZI, Chief Judge, SIMS, Judge and GIFFORD, Judge join (dissenting):

I dissent from this order for the reasons set forth in *United States v. Gaskins* __ M.J. __ (Army Ct. Crim. App. 27 Aug. 2010) (Ham, J., dissenting).

GASKINS—ARMY 20080132

DATE:  27 August 2010



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

CF:   Chief-DAD
      Chief-GAD
      JALS-CCR
      JALS-CCZ
      JALS-All Panels

William E. Cassara, Esquire/Counsel for Appellant
Captain Nicole L. Fish, JA/GAD