**UNITED STATES, Appellee,**

v.

**Private First Class Craig L. CARROLL, 219–94–5006, United States Army, Appellant.**

**ACMR 9300559.**

U.S. Army Court of Military Review.

28 July 1994.

For Appellant: Captain Silas R. DeRoma, JAGC (argued); Major Michael A. Egan, JAGC (on brief).

For Appellee: Captain John W. O'Brien, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC, Captain Jane F. Polcen, JAGC (on brief); Major Lyle D. Jentzer, JAGC.

Before CREAN, CAIRNS, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Contrary to his plea, appellant was convicted, by a general court-martial consisting of officer and enlisted members, of wrongful possession of lysergic acid diethylamide (LSD) with the intent to distribute in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three years, forfeitures of $540.00 pay per month for thirty-six months, and reduction to Private E1.

The appellant contends, inter alia, that his conviction is factually insufficient. We agree.

The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having personally observed the witnesses, we ourselves are convinced beyond a reasonable doubt of appellant's guilt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). We have carefully weighed the evidence and find that the government has not met its

burden of proof as we are not convinced beyond a reasonable doubt of the appellant's guilt.

■ On 15 October 1992, the appellant commenced performing guard duty with his platoon at Travis Air Force Base (AFB), California. Prior to departing Fort Ord, California, all platoon personnel were required to store their personal belongings in their wall lockers. Once this was done, each locker was secured by a metal band that was routed through the handle of the locker and locked with either a key or combination padlock.

On 25 October 1992, the appellant's commander conducted a health and welfare inspection of all the rooms in the barracks using four drug-seeking dogs including one named Nero. They were trained to alert to the scents of marijuana, hash, heroin, cocaine and methamphetamine. They could not alert on LSD. During the inspection, Nero alerted on the appellant's third floor barracks room and on his secured wall locker.[1] Appellant's platoon sergeant, Staff Sergeant (SSG) Hagan, cut the lock off the wall locker and it was searched by an agent of the Criminal Investigation Command (CID). The agent discovered what appeared to be twenty-one hits of LSD in a ziploc baggie in a can in the front of the top shelf of the wall locker. A field test and a full laboratory test confirmed his suspicions. No contraband on which Nero could have alerted was found in the appellant's locker.

All of the government's witnesses who observed the appellant's locker during the health and welfare inspection, testified that the metal band was down around the bottom of the wall locker when they entered the appellant's room and not through the handle and key lock. The unit's lock and key custodian testified that the appellant was the only one who lived in, and had access to, the room.

During the government's case in chief, the evidence was sufficient to establish a prima facie case based on a theory of constructive possession of the LSD. *See United States v. Mance*, 26 M.J. 244 (C.M.A.1988). The only testimony presented by the government to show an intent to distribute was the opinion of two CID agents that any amount of LSD over ten units was more than for personal use and was typically for distribution.

The appellant testified that his wall locker was banded and locked prior to his deploying to Travis AFB. Private First Class (PFC) Addison testified that he was in the appellant's room with the appellant and saw the wall locker banded. Furthermore, Sergeant Theus, appellant's squad leader, testified that he inspected his squad's lockers to ensure they were banded and, because of the location of the appellant's room, his was the last locker he inspected. The appellant's locker was banded and locked according to the unit's instructions. Sergeant Theus and the appellant then exited the barracks and continued to prepare for their deployment. Sergeant Theus did not believe that the appellant had an opportunity to return to his room prior to boarding the bus to Travis AFB. The appellant further testified that as he exited the building, he hung his keys on a key board located at the Charge of Quarter's (CQ) desk.[2] This key board was used by the unit's members as a place to hang their keys while at physical training or other functions.

The defense presented Mr. Carl Jones, a former member of the appellant's unit, who testified that the LSD belonged to him and that he placed it in the appellant's locker. Specifically, he stated that his platoon remained behind while the appellant's platoon deployed. He recognized the appellant's keys on the key board because he had previously used them and they had an attached Reebok logo. On 24 October 1992, he took the appellant's keys off the board, entered the appellant's room, and opened the wall

---

1. Nero alerted four times during the inspection of the unit. Of the four alerts, one revealed a sandwich size bag one-quarter full of marijuana, one revealed several empty baggies with marijuana residue in a brown paper bag, one revealed the LSD (from the appellant's wall locker), and apparently one revealed nothing.

2. No witness was asked to describe the shape, size, and specific location of the key board. Such testimony would have shown whether it was easy for anyone to determine if keys were hanging on it or not.

locker to use some of his cologne. At the time, he had the strip of LSD with him and recalled that he had recently heard that there was going to be an unannounced health and welfare inspection the following morning. Believing that the appellant's platoon would not be part of the inspection due to its deployment, he decided to hide his LSD in a canister located on the top shelf of the appellant's locker. He then shut the locker without rebanding it, and returned the keys to the key board.

Although he testified under a grant of immunity,[3] Mr. Jones did not want to testify "even to help a friend." He flew from Buffalo, New York, to Fort Ord only after the trial counsel threatened to have him forcefully placed on a flight by a federal marshal. He explained that he did not come forward after the discovery of the LSD because he wanted to leave the Army with "good paper", which he did on 23 December 1992. Moreover, he did not hear of any action being taken against the appellant between the date of the incident and the date of Mr. Jones' discharge.[4] He only learned about the court-martial a few days prior to trial when he called his old unit to speak with, not the appellant, but another friend. It was at that time that the appellant informed Mr. Jones of the court-martial, and, in response, Mr. Jones confessed to the appellant.

A pivotal question on the issue of constructive possession was whether the appellant in fact left his keys in the company area as he and Mr. Jones testified. Further evidence that the appellant's keys were left at the barracks was elicited by a court member's question to PFC Addison. The question asked PFC Addison if the appellant mentioned the location of his keys while they were on guard duty at Travis AFB. Private First Class Addison responded that he had previously borrowed a nail clipper from the appellant that he normally kept on his key chain. While at Travis AFB, he asked the appellant if he could borrow his nail clipper. The appellant responded that he had left his key ring at the barracks.[5]

To validate this conviction, we would have to disbelieve Mr. Jones, PFC Addison, and the appellant. Mr. Jones' testimony appeared to corroborate the defense evidence, but did not mirror the appellant's version one hundred percent. We would be concerned if they had testified exactly the same. The minor discrepancies, while clearly not discrediting, only support our belief that they did not contrive this story together. Additionally, Mr. Jones was reluctant to testify and had to be urged in the strongest terms to appear at the trial. He further understood that the grant of immunity did not cover perjury. Although PFC Addison was a friend of the appellant, his corroborating testimony that placed the appellant's keys back at the barracks came in response to a court member's question. As for the appellant's testimony, while he had the highest motive to lie, we believe he did not. He has maintained his innocence throughout the entire process. Specifically, he immediately denied the offense when his first sergeant and commander confronted him after the health and welfare inspection; he denied it at his Article 32(b), UCMJ, hearing; he denied the charge at trial, and further emphasized his denial during his sentencing proceedings not once, but twice; and his post-trial letter to the convening authority continued to profess his innocence.

There is no evidence that the appellant was in any type of trouble during his service from November 1990 to the date of the incident in October 1992. This, interestingly enough, also includes no failed urinalysis or any other indications of drug use or distribution. The CID agents testified that they had drug "leads" on two suspects in the appellant's unit, but the appellant was not one of these two individuals.

---

3. There is no appellate exhibit reflecting this grant of immunity from a U.S. Attorney; however, it was referred to by the trial counsel and mentioned repeatedly before the court members.

4. The Charge was preferred against the appellant on 5 January 1993.

5. We note that this was not a rehearsed part of the defense's case. This was a spontaneous question asked by a court member after both the defense and prosecution had completed their examination of PFC Addison.

The evidence presented by the government established a prima facie case of constructive wrongful possession of LSD with the intent to distribute. However, the defense presented substantial evidence to rebut the government's prima facie case. This evidence was not contradicted by the government,[6] nor were the defense witnesses discredited.[7]

We are cognizant that we should give great deference to panel members who have personally observed and judged the demeanor of the witnesses. However, we must ourselves independently weigh the evidence and determine controverted questions of fact. *United States v. Irvinspence*, 39 M.J. 893, 896 (A.C.M.R.1994). The unrebutted evidence presented by the defense presents a reasonable doubt that the appellant is guilty of possession of LSD with the intent to distribute.

The findings of guilty and the sentence are set aside and the Charge and its Specification are dismissed.[8]

6. The ziploc baggie could have been, but never was tested for fingerprints. This failure severely limited the government's ability to rebut the defense's contention that Mr. Jones, rather than the appellant, possessed the LSD.

7. Although the company commander and SSG Hagan testified that they did not notice any keys on the key board, the government did not call any of the CQs, particularly the one who was on duty on the day Mr. Jones testified he took the appellant's keys (24 October 1992), to conclusively testify that there were no keys on the key board between 15 and 25 October 1992.

8. Prosecution Exhibit 6, a photograph of the LSD that was substituted for the actual LSD is missing from the record of trial. Because our disposition is favorable to the appellant, we will not answer the question whether this administrative error is a substantial omission to make the record nonverbatim. However, we bring to the attention of all trial counsel and court reporters the case of *United States v. Church*, 23 M.J. 870 (A.C.M.R.1987), *review denied*, 25 M.J. 241 (C.M.A.1987). Failure to comply with regulatory mandates with respect to a verbatim record of trial will preclude affirmance of a punitive discharge. Army Reg. 27–10, Legal Services: Military Justice, para. 5–31a (22 Dec.1989), requires that records of trial will be prepared per Rule for Courts–Martial 1103. This rule states that a complete record of trial shall include all exhibits or photographs thereof. There is no excuse for an exhibit to be omitted from a record of trial. Incidents of poor administration reflect adversely on the United States Army and the military justice system. *United States v. Yarbrough*, 36 M.J. 1071, 1075 (A.C.M.R.1993) (Crean, S.J., concurring).