# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 BRIAN C. HOTALING**
**United States Army, Appellant**

ARMY 20190360

Headquarters, Fort Campbell
Matthew A. Calarco and Wendy P. Daknis, Military Judges
Colonel Andras M. Marton, Staff Judge Advocate (pretrial)
Colonel Laura J. Calese, Staff Judge Advocate (post-trial)

For Appellant: Colonel Michael C. Friess, JA; Lieutenant Colonel Angela D. Swilley, JA; Captain Paul T. Shirk, JA (on brief); Colonel Michael C. Friess, JA; Lieutenant Colonel Angela D. Swilley, JA; Major Christian E. DeLuke, JA; Captain Paul T. Shirk, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Major John D. Martorana, JA (on brief).

11 December 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KRIMBILL, Chief Judge (IMA):

Appellant's case is the latest in a troubling line of cases arising from Fort Campbell fraught with unreasonable post-trial delay. Like its predecessors, this case raises substantial questions as to the appropriateness of appellant's sentence. After considering the circumstances unique to this case, we find that a punitive discharge

---

[1] Chief Judge (IMA) Krimbill and Judge Arguelles both decided this case while on active duty.

is not an appropriate sentence for appellant. Accordingly, we set aside appellant's bad-conduct discharge, and affirm only so much of the sentence as provides for confinement for thirty days and reduction to the grade of E-1.[2]

Appellant's sole assignment of error concerns the dilatory post-trial processing of his case. Appellant alleges that the government's dilatory post-trial processing, 350 days between sentencing and action, warrants relief under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). We agree relief is warranted for the flagrant disregard of timely post-trial processing in this case.

## BACKGROUND

Appellant was a married twenty-four-year-old Soldier who served as a vehicle mechanic. He and his wife had two children of their own and one child from a previous relationship of appellant's wife. All three children were under the age of five years. The government charged appellant with three specifications of negligent failure to create a safe environment for his children. Specifically, appellant pleaded guilty to "failing to maintain sanitary living quarters" for his three minor children over a period of twelve days. Appellant's wife was present in the house for five of the twelve days charged. After the neglect was discovered, appellant was ordered to move into the barracks. Appellant ultimately spent approximately twenty-two months living in the barracks while awaiting trial.

Appellant pleaded guilty to all three specifications alleging neglect. During sentencing, appellant's former First Sergeant, who viewed the condition of appellant's home at the time the neglect was discovered, offered strikingly favorable testimony of appellant's performance as a Soldier. Other members of appellant's command provided less favorable testimony. Appellant was ultimately sentenced to a punitive discharge, confinement for thirty days, and reduction to the grade of E-1.

The military judge announced appellant's sentence on 29 May 2019, and authenticated the 417-page transcript 78 days later.[3] The Fort Campbell Staff Judge Advocate (SJA) completed her recommendation (SJAR) on 17 October 2019, 141

---

[2] A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of three specifications of child endangerment, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty days, and reduction to the grade of E-1.

[3] Both of the military judges who presided over this case received the transcript on 31 July 2019 and authenticated it on 15 August 2019.

days after the sentence was announced. Alarmingly, the government then failed to serve the record of trial and the SJAR on appellant until 20 April 2020—186 days after the SJA signed the SJAR. Essentially, it took the government over six months to place a copy of the record of trial and SJAR in the mail. In the six months that elapsed between signing the SJAR and serving it on appellant, appellant submitted two separate requests for speedy post-trial processing.[4]

Appellant submitted his post-trial submissions ten days after receiving a copy of the record of trial and SJAR, and supplemented those submissions four days later. In both his initial and supplemental post-trial submissions, appellant confronted the Fort Campbell Office of the Staff Judge Advocate (OSJA) with several of this court's recent opinions in which we provided relief to various appellants because of the Fort Campbell OSJA's inability to effectively and efficiently process cases after a sentence was announced.

In the addendum to the SJAR, the SJA attempted to justify the delay by identifying factors that ostensibly contributed to the post-trial delay in this case. Those factors include multiple deployments impacting legal personnel and post-trial oversight, an unprecedented increase in the volume and complexity of cases (including capital litigation), several unforeseen personnel challenges (including the unexpected resignation of the post-trial paralegal), and the COVID-19 pandemic.

In total, the Fort Campbell OSJA took 350 days (from 29 May 2019 to 13 May 2020) to process appellant's case post-trial, nearly 200 days of which were spent waiting to place documents in the mail.

## DISCUSSION

This court has two distinct responsibilities in addressing post-trial delay. *See United States v. Simon*, 64 M.J. 205, 207 (C.A.A.F. 2006). First, as a matter of law, this court reviews whether claims of excessive post-trial delay resulted in a due process violation. *See* U.S. Const. amend. V; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 38 (C.A.A.F. 2003). Second, even if we do not find a due process violation, we may nonetheless grant an appellant relief for excessive post-trial delay under our broad authority of determining sentence appropriateness under Article 66(d), UCMJ. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

---

[4] Appellant submitted his first request on 12 December 2019 (197 days after announcement of the sentence), and his second request on 31 January 2020 (247 days after announcement of the sentence).

We review de novo whether an appellant has been denied his due process right to a speedy post-trial review. *Moreno*, 63 M.J. at 135. A presumption of unreasonable post-trial delay exists when the convening authority fails to take action within 120 days of completion of trial. *Id.* at 142. In *Moreno*, our Superior Court adopted the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which we employ when a presumption of unreasonable post-trial delay exists, to determine whether the post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* In assessing the fourth factor of prejudice, we consider three sub-factors: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Id.* at 138–39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

*1. Due Process*

In this case, the first factor weighs heavily in favor of appellant; 350 days from sentence announcement to action by the convening authority is presumptively unreasonable, as it is nearly three times the authorized processing time.

Related to the second prong, in the post-trial processing memo, the SJA stated that "[m]ultiple deployments . . . [an] increase in volume and complexity of cases . . . unforeseen personnel challenges . . . [and] [f]rom 17 March 2020 to [13 May 2020], the COVID-19 pandemic" contributed to the post-trial delay in this case. Simply put, none of the listed reasons for the delay provides a justification for the inconceivable delay in this case. First, "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) (citations omitted). Second, even if the purported reasons for the delay somehow justified the government's delay, it still took over six months (186 days) for the OSJA to perform the purely ministerial act of serving the SJAR and the record of trial on appellant. Depositing documents in the mail does not require any specialized legal training, nor does it require any significant time commitment. Third, while the COVID-19 pandemic could justify some amount of delay, the pandemic had virtually no impact on this case. By the SJA's own concession, the pandemic did not impact the OSJA until 17 March 2020, a time by which the government had already failed to simply mail the SJAR and record of trial for over five months. In total, the second factor also weighs heavily in favor of appellant.

The third factor likewise weighs in favor of appellant, as appellant submitted two separate requests for speedy post-trial processing. Regarding the fourth factor, appellant specifically acknowledges there was no prejudice in his case, nor do we

identify any such prejudice based on our review of the record. As such, the fourth factor weighs in favor of the government.

Absent a finding of prejudice, we may still find "a due process violation only when, in balancing the other three [*Moreno*] factors, the delay is so egregious that tolerating it would adversely affect the public's perception of fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Here, after balancing the four *Moreno* factors we decline appellant's invitation to find a due process violation. However, this court's analysis does not end there.

### 2. *Article 66, UCMJ*

In finding the post-trial delay was unreasonable but not unconstitutional, we turn to our "authority under Article 66[(d), UCMJ] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." *Tardif*, 57 M.J. at 224 (citing *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)). Specifically, we next "determine what findings and sentence 'should be approved' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Id.*

After considering the totality of the record of trial, we are convinced that appellant's punitive discharge should not be approved. While military courts are unquestionably authorized to provide such relief, *see id.* at 225; *Moreno*, 63 M.J. at 143, we are cognizant that we must "tailor an appropriate remedy [for the post-trial delay] . . . to the circumstances of the case." *United States v. Jones*, 61 M.J. 80, 86 (C.A.A.F. 2005) (quoting *Tardif*, 57 M.J. at 225). In arriving at such an extreme and drastic remedy, we find the combination of four circumstances, unique to this case, warrant setting aside appellant's punitive discharge.

First, it is important to consider at what point during the post-trial process the unreasonable delay occurred. Here, the most unreasonable portion of the delay occurred between the SJA signing the SJAR and service of the SJAR and record of trial on appellant. Once the SJAR was signed, the very next step in the post-trial processing was the service on appellant and his defense counsel. As noted in the *Barker* analysis above, service of the documents is ministerial and in all likelihood only required the OSJA to walk the documents to the mailroom. Despite the relative ease of completing this step, the OSJA failed to serve appellant with the SJAR and record of trial for over six months (186 days), which itself far exceeds the total permissible post-trial processing timeline.

Second, and somewhat intertwined with the first circumstance, is why the unreasonable delay occurred. We addressed this fully above in our analysis of the second *Barker* factor. It bears repeating, however, that the OSJA failed to provide

even a plausible justification for the unreasonable delay. No amount of personnel shortage could necessitate a six-month delay in putting a 471-page record of trial and a one-page SJAR in the mail. Such a delay is simply unjustifiable.

Third, the SJA's recommendation to the convening authority in her addendum to the SJAR is particularly troubling. Therein, the SJA acknowledged that, at that time, this court had recently castigated Fort Campbell's post-trial processing in at least three separate opinions.[5] The SJA also "agree[d] that the delay in providing a copy of the Record of Trial to [appellant] prejudice[d] his rights in the post-trial process."[6] Despite knowing that this court was providing remedies for Fort Campbell's repeated dilatory post-trial processing, and despite the apparent belief that appellant was prejudiced by the same dilatory post-trial processing, the SJA recommended that no clemency was warranted in this case.[7] Essentially, the SJA made a recommendation that she disagreed with this court about the import of and relief for unreasonable post-trial delay.

Finally, the persistent post-trial processing delays arising out of the Fort Campbell OSJA also factor into our analysis. The sluggish post-trial processing in this case is yet another example of Fort Campbell's seeming inability to fulfill its legal obligations with respect to post-trial processing of courts-martial. Within just the past year, this court has cited dilatory post-trial processing at Fort Campbell in eight cases;[8] this case marks the ninth such finding. Despite our repeated

---

[5] We note appellant's trial defense counsel highlighted this court's concern with Fort Campbell's post-trial processing in appellant's post-trial submissions to the convening authority.

[6] As noted above, we disagree that appellant suffered any actual prejudice as a result of the delay.

[7] The convening authority's clemency powers were limited by Article 60, UCMJ. However, appellant specifically requested a recommendation from the convening authority to this court concerning appropriate clemency in this case.

[8] *United States v. Badgett*, ARMY 20190177, 2020 CCA LEXIS 403, at *6 (Army Ct. Crim. App. 4 Nov. 2020 (summ. disp.) (post-trial processing delay of 343 days warranted sentence credit); *United States v. Hickey*, ARMY 20190072 (Army Ct. Crim. App. 7 Oct. 2020) (decision) (dilatory post-trial processing warranted a two-month reduction in sentence); *United States v. Barchers*, ARMY 20180648 (Army Ct. Crim. App. 30 Sep. 2020) (decision) (granting sentence relief for 129-day lapse between appellant's post-trial submission and convening authority action); *United States v. Feeney-Clark*, ARMY 20180694, 2020 CCA LEXIS 256, at *7 (Army Ct.

(continued . . .)

repudiation of Fort Campbell's post-trial processing performance, the problem persists. We yet again remind military justice practitioners that "[i]ncidents of poor administration reflect adversely on the United States Army and the military justice system." *United States v. Carroll*, 40 M.J. 554, 557 n.8 (A.C.M.R. 1994). The time is now to improve post-trial processing at Fort Campbell.

Having considered the entire record, especially the four circumstances listed above, and exercising our authority under Article. 66, UCMJ, we find appellant is entitled to relief for the dilatory post-trial processing of his case. Appellant's punitive discharge "should [not] be approved" under the unique facts and circumstances of this case.[9] *See* UCMJ art. 66(d).

---

(. . . continued)
Crim. App. 29 Jul. 2020) (mem. op.) (finding post-trial delay of 303 days unreasonable, but unable to provide meaningful sentence credit); *United States v. Diaz*, ARMY 20180556, 2020 CCA LEXIS 154, at *7 (Army Ct. Crim. App. 11 May 2020) (summ. disp.) (post-trial processing delay of 303 days warranted sentence credit); *United States v. Notter*, ARMY 20180503, 2020 CCA LEXIS 150, at *6 (Army Ct. Crim. App. 4 May 2020) (summ. disp.) (post-trial processing delay of 337 days warranted sentence credit); *States v. Ponder*, ARMY 20180515, 2020 CCA LEXIS at 38, at *3 (Army Ct. Crim. App. 10 Feb. 2020) (summ. disp.) (post-trial processing delay of 296 days warranted sentence credit); and *United States v. Kizzee*, ARMY 20180241, 2019 CCA LEXIS 508, at *7 (Army Ct. Crim. App. 12 Dec. 2019) (summ. disp.) (post-trial processing delay of 274 days warranted sentence credit).

[9] We note that in *Feeney-Clark*, another panel of this court elected not to set aside the punitive discharge, finding the punitive discharge in that case "to be appropriate when considering" the circumstances of that case. ARMY 20180694, 2020 CCA LEXIS 256, at *5-6 n.5. Our decision in this case in no way conflicts with the decision in *Feeney-Clark*. Instead, we are merely convinced that appellant's punitive discharge is not appropriate given the unique facts and circumstances of this case. We further reject the Government's contention that *Feeney-Clark* stands for the proposition that our setting aside the punitive discharge in this case amounts to clemency. *Cf. United States v. Hobbs*, 30 M.J. 1095, 1097 (N.M.C.M.R. 1989) ("[T]o provide relief for the inordinately long and prejudicial post-trial delay, we find the appropriate remedy under the circumstances is disapproval of the bad-conduct discharge.").

## CONCLUSION

The findings of guilty are AFFIRMED. Appellant's bad-conduct discharge is SET ASIDE. Only so much of the sentence as provides for confinement for thirty days and reduction to the grade of E-1 is AFFIRMED. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BROOKHART and Judge ARGUELLES concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court